[Cite as *State ex rel. Donohoe v. Indus. Comm.,* 130 Ohio St.3d 390, 2011-Ohio-5798.]

THE STATE EX REL. DONOHOE, APPELLEE AND CROSS-APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLEE; KENNY HUSTON COMPANY,
APPELLANT AND CROSS-APPELLEE.

[Cite as *State ex rel. Donohoe v. Indus. Comm.,*
130 Ohio St.3d 390, 2011-Ohio-5798.]

*Workers' compensation—Industrial Commission is to make reasonable inferences
from evidence—VSSR can be proved without eyewitness testimony—
Clarification needed—Judgment affirmed.*

(No. 2010-0734—Submitted August 8, 2011—Decided November 17, 2011.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County,
No. 08AP-201, 2010-Ohio-1317.

_____

**Per Curiam**.

{¶ 1} Patrick Donohoe died from injuries sustained in a workplace accident. His widow, Catherine M. Donohoe, appellee and cross-appellant, has filed an application for additional workers' compensation benefits, claiming that his accident resulted from his employer's violations of specific safety requirements ("VSSRs") governing the construction industry. Appellee, Industrial Commission of Ohio, denied her application, but the Court of Appeals for Franklin County vacated the order and returned the cause to the commission for further consideration. *State ex rel. Donohoe v. Indus. Comm.*, Franklin App. No. 08AP-201, 2010-Ohio-1317, ¶ 28. That judgment is now before us.

{¶ 2} In 2004, decedent's employer, the Kenny Huston Company, appellant and cross-appellee, was doing masonry work on a construction project at a military base. In late summer, Huston employees Todd Jenkins and Burt Selby were assigned to lay the brick on what has been referred to as the building's

south parapet or south vestibule parapet wall. This task required them to work from a temporary platform ("work platform") that was about 13 feet above the ground.

{¶ 3} About 13 feet behind the two men was the building's one-story exterior wall that, in one spot, extended only a foot or two above the work platform. Adjacent to and slightly below the outside of the exterior wall was a partially assembled scaffold that did not have guardrails on the sides of the platforms. The scaffold, which was apparently being dismantled, was not considered part of the south parapet work area.

{¶ 4} On August 30, 2004, decedent was assisting Selby and Jenkins. As a laborer, his main task was to keep the two masons supplied with brick, mortar, and other necessary materials. Supplies began to run low by midafternoon, prompting repeated calls for decedent, but he did not respond. Finally looking to find him, the men peered over the exterior wall and saw decedent lying on the ground. He had obviously fallen, lost his hardhat during the descent, and struck his head on either a concrete footer or the ground surrounding it. Decedent died later from those injuries.

{¶ 5} After a workers' compensation death claim was allowed, his widow filed her VSSR application with the commission, alleging that her husband's accident had occurred because Huston had not complied with numerous specific safety requirements pertaining both to scaffolding particularly and, more generally, to work done at a specified height above the ground. The parties could agree that decedent had fallen from the scaffold. They disagreed on how far he had fallen and whether he had fallen a short distance from the scaffold's cross-braces or from one of its high unguarded platforms.

{¶ 6} There was evidence suggesting that decedent had fallen from a height of 12 feet or more, which could encompass either the scaffold's cross-braces or one of its platforms. Other evidence indicated that a fall from a height

as low as one to three feet could have caused the fatal head trauma if decedent's head had struck the concrete footer. This second scenario, however, would rule out the possibility that decedent had fallen from one of the unguarded scaffold platforms, which were located higher up on the structure. It would also render inapplicable those specific safety requirements governing work at heights.

{¶ 7} At a hearing before a commission staff hearing officer ("SHO"), Huston argued that decedent may have sustained his injuries in a short-distance fall from the scaffold's cross-braces. In addition to negating the applicability of many of the specific safety requirements the widow cited, Huston also argued that decedent's presence on the cross-braces constituted unilateral negligence and would bar any VSSR finding. The widow, on the other hand, continued to assert that her husband had fallen a much greater distance. She also argued that even if he had fallen from the cross-braces, he was on them only because Huston had provided no other way to reach the mason's work platform. According to the widow, Huston could not successfully assert a unilateral-employee-negligence defense because Huston had failed to first comply with a safety regulation requiring safe access to scaffolds.

{¶ 8} Huston prevailed. The SHO wrote:

{¶ 9} "In the present case the decedent fell and hit his head, thereby causing his death. The facts indicate that no one saw the decedent fall, no one has knowledge where he was when he fell ie. [sic], did he fall from the scaffold or did he fall climbing up/down the scaffold. Furthermore, no one knows why he was where he was at the time of his fall. * * * Consequently, the decedent-widow *can not* prove by a preponderance of the evidence that there was a violation of a specific safety requirement, if there was a violation, which section was violated and whether that violation caused the decedent's death. As such, the instant application for a violation of the specific safety requirement is denied.

{¶ 10} "All evidence was reviewed and considered." (Emphasis added.)

{¶ 11} Rehearing was denied.

{¶ 12} Donohoe's widow filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying her application. She argued that the commission had denied her application solely because there were no eyewitnesses who could definitively identify the point from which her husband fell. She argued that a lack of eyewitnesses should not defeat her claim and asserted that the SHO was required to draw inferences from the evidence presented and essentially pick one side's version of the accident. That the SHO did not, according to the widow, could mean only that the SHO did not review the evidence.

{¶ 13} The court of appeals agreed:

{¶ 14} "[W]e believe the tenor of the SHO's order is that relator was incapable of proving her VSSR claim in the absence of eyewitness testimony. Clearly, the case law does not support such a requirement. * * *

{¶ 15} "Rather than agreeing with the magistrate's finding that the commission considered the reports and found them to be unreliable, we believe the commission did not consider the reports at all in the absence of supporting eyewitness testimony. By reciting the uncertainty surrounding decedent's fall based upon the absence of witnesses, the commission suggests that there was no evidence supporting relator's claim. Indeed, it held that relator 'can not' prove her VSSR claim." *Donohoe*, 2010-Ohio-1317, ¶ 23-24.

{¶ 16} The court issued a limited writ that vacated the order and returned the cause to the commission for further consideration and an amended order. Id. at ¶ 28. Both the widow and Huston now appeal to this court as of right.

{¶ 17} The difficulty in this case, as the court of appeals accurately observed, is that the SHO's order—from an evidentiary standpoint—can be interpreted in different ways. Id. at ¶ 21. The order contained the boilerplate "all evidence was reviewed and considered," leading the appellate magistrate to

assume that the SHO had indeed evaluated the evidence and was not persuaded by the widow's version of events. Id. at ¶ 22, 45. The court of appeals acknowledged that language, but found that other language in the order cast doubt on the true extent of evidentiary review. Id. at ¶ 26.

{¶ 18} The court based its conclusion on two things: (1) the SHO's preoccupation with the lack of eyewitnesses to the fall and (2) her declaration that the widow "can not" prove her case. To the court of appeals, the focus on eyewitness testimony could be explained only by the SHO's mistaken belief that such evidence was legally required to prove a VSSR. Id. at ¶ 24. Only the belief in that per se rule, the court continued, would justify the SHO's conclusion that the widow "can not"—as opposed to "did not"—carry her burden of proof. Id. If the SHO had so believed, then she would have had no reason to review the rest of the evidence. Id. at ¶ 25.

{¶ 19} An order that can engender two viable, yet irreconcilable, interpretations is too ambiguous to withstand scrutiny, and one that is potentially based on an erroneous belief that a VSSR cannot be proved in the absence of eyewitnesses is clearly an abuse of discretion. See, e.g. *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, 781 N.E.2d 170, ¶ 69. (The court "has never required direct evidence of a VSSR. To the contrary, in determining the merits of a VSSR claim, the commission or its SHO * * * may draw reasonable inferences and rely on his or her own common sense in evaluating the evidence"). The court of appeals was therefore correct in returning the cause to the commission for clarification and consideration of all the evidence if the SHO did not do so previously.

{¶ 20} The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Reminger Co., L.P.A., Patrick Kasson, Mick L. Proxmire, and Melvin J. Davis, for appellee and cross-appellant.

Buckley King, L.P.A., and Christopher L. Lardiere, for appellant and cross-appellee.

Michael DeWine, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for appellee.

_____