[Cite as *State ex rel. Almendinger v. Indus. Comm.*, 2013-Ohio-5103.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, ex rel.<br>Joel Almendinger, | : | |
| | : | |
| Relator, | : | |
| | : | No. 12AP-601 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio<br>and McGraw Construction Co., | : | |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on November 19, 2013

*Crowley, Ahlers & Roth Co., L.P.A.,* and *Edward C. Ahlers*, for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Joel Almendinger, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's physician's request for medical services, and to enter an order granting the request.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who has now rendered a decision and recommendation that includes findings of fact and conclusions of law, which is

appended to this decision. The magistrate concluded that the commission abused its discretion in denying the request for medical services, and recommended that this court issue the requested writ of mandamus.

{¶ 3} The commission has filed the following objection to the magistrate's decision:

> The magistrate erred in substituting his judgment for that of the Industrial Commission in its factual interpretation of the report of Dr. Elwert.

{¶ 4} As reflected in the facts given in the magistrate's decision, relator suffered an industrial injury in 1983. His industrial claim was allowed for sprain lumbar region; herniated disc L5-S1. Relator received care over the years from several chiropractors. Relator began receiving chiropractic care from Rob Cartwright, D.C. in May 2011. Dr. Cartwright filed an Ohio Bureau of Workers' Compensation ("bureau") C-9 on February 1, 2012, requesting authorization for medical services. Specifically, the C-9 requested authorization for chiropractic manipulation and therapy, to include electrical stimulation and mechanical traction, once per month for a six-month period. The bureau requested that Jeffrey C. Elwert, D.C. conduct a medical review of relator.

{¶ 5} Dr. Elwert issued his report on February 21, 2012. Dr. Elwert reviewed relator's medical history, and concluded that the medical services requested were not reasonably related to the industrial injury, were not reasonably necessary for the treatment of the industrial injury, and that the costs for the requested services were not medically reasonable. Regarding the form C-9 filed by Dr. Cartwright, Dr. Elwert noted that Dr. Cartwright "fail[ed] to identify sympomatology as specifically related to the claim allowance of a herniated disc" and "fail[ed] to support that subjective complaints and objective findings are consistent with claim allowances." (Stipulated Record, 9.) Dr. Elwert further found that relator's visits with Dr. Cartwright were "on a fairly consistent monthly increment indicating regularly scheduled appointments on a supportive care/maintenance basis." (Stipulated Record, 9.) Dr. Elwert noted that, pursuant to the Official Disability Guidelines regarding chiropractic care, "many passive and palliative interventions can provide relief in the short term but may risk treatment dependence without meaningful long-term change." (Stipulated Record, 9.) As relator

had received treatment at the "same/similar frequency" for quite some time, Dr. Elwert determined that the "continuation of care as requested would not be deemed appropriate."  (Stipulated Record, 9.)

{¶ 6}   Following an April 18, 2012 hearing, a district hearing officer ("DHO") issued an order denying the C-9 request.  The DHO determined that relator failed to carry his burden of proof, and determined that realtor had "not presented sufficient persuasive medical evidence from the [his] treating physician, Dr. Cartwright, establishing that the requested treatment" was reasonably related and medically necessary and appropriate for treatment of the allowed conditions.  (Stipulated Record, 1.)

{¶ 7}   Relator filed an affidavit on April 25, 2012 indicating that, though he had conversations with physicians over the years about the possibility of back surgery, he did not want to have surgery.  Relator indicated that, in "an effort to avoid surgery" he "relied upon chiropractic care which [he] found to be very helpful."  (Stipulated Record, 17.)  Relator noted that he did not schedule regular chiropractic visits, as he would simply call his chiropractor on a day when he felt he needed to go in for a visit.

{¶ 8}   On May 25, 2012, Dr. Cartwright wrote a letter to the bureau, "appealing the medically necessary care" to relator.  (Stipulated Record, 13.)  Dr. Cartwright identified the relator's allowed conditions, and asserted that the requested care was "directly related" to the conditions allowed in relator's industrial claim.  Dr. Cartwright noted that relator's chiropractic visits allowed relator to function and to avoid surgery.  Dr. Cartwright stated that relator was "doing better by 75% in pain and function, and 50% better in increased strength."  (Stipulated Record, 13.)

{¶ 9}   Following a June 11, 2012 hearing, a staff hearing officer ("SHO") issued an order affirming the denial of the C-9.  The SHO determined that the "requested chiropractic treatment [was] not appropriate or necessary for the treatment of the allowed conditions based upon the report of Dr. Elwert."  (Stipulated Record, 3.)

{¶ 10} The magistrate determined that the SHO abused its discretion by relying on Dr. Elwert's report to deny the C-9 request.  The magistrate concluded that "[w]ith the issuance of Dr. Cartwright's May 25, 2012 report, Dr. Elwert's report is no longer some evidence that can support a finding that the C-9 is deficient because of a failure to

relate symptomology to the allowed conditions of the claim." (Magistrate's Decision, 8.) The magistrate further noted that, as the SHO's order did not mention Dr. Cartwright's May 25, 2012 report, the SHO's order indicated that the SHO had not considered the May 25, 2012 report.

{¶ 11} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police and Firemen's Disability and Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consolidated Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982). "A clear legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 12} The commission is exclusively responsible for evaluating the weight and credibility of the evidence. *State ex rel. Burley v. Coil Packaging, Inc.*, 31 Ohio St.3d 18, 20-21 (1987). Thus, the reviewing court's role is to determine whether there is some evidence in the record to support the commission's decision; a court may not substitute its judgment for that of the commission or second-guess the commission's evaluation of the evidence. *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, ¶ 11.

{¶ 13} The commission need only enumerate the evidence it relied upon to reach its decision. *State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, ¶ 16, citing *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481, 483-84 (1983). The commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive. *Id.*, citing *State ex rel. DeMint v. Indus. Comm.*, 49 Ohio St.3d 19, 20 (1990). Nevertheless, if the commission elects to list all evidence before it, "but omits a particular document from that recitation," the court will presume that the commission overlooked the document. *Id.* at ¶ 17. "If that document could influence the outcome of the matter in question, we will return the matter to the commission for further consideration." *Id.*

{¶ 14} The bureau and the commission share the power to oversee and determine the reasonableness and necessity of health care expenditures. *State ex rel. Sugardale Foods, Inc. v. Indus. Comm.*, 90 Ohio St.3d 383, 386 (2000). Authorization for medical treatment requires a causal relationship between the allowed conditions and the proposed services. *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229, 232 (1994). In *Miller*, the Supreme Court of Ohio set forth the following three-step inquiry to determine whether medical services should be authorized: (1) whether the requested services reasonably relate to the allowed conditions; (2) whether the services are necessary for treatment of the industrial injury; and (3) whether the cost of the requested services is medically reasonable. A claimant bears the burden of proving all three prongs of the *Miller* test in order to secure authorization for the requested procedure. *State ex rel. Maxim Healthcare Servs., Inc. v. Indus. Comm.*, 10th Dist. No. 11AP-122, 2012-Ohio-1012, ¶ 10.

{¶ 15} The magistrate recommended granting the requested writ because Dr. Cartwright's May 25, 2012 report adequately connected relator's symptoms to the allowed conditions, thereby abolishing Dr. Elwert's concern that Dr. Cartwright failed to relate relator's symptomology to the allowed conditions. Dr. Elwert's report, however, contained an additional basis for denying the C-9 request. Dr. Elwert noted in his report that relator had received care with Dr. Cartwright on a fairly consistent basis, and noted that "passive and palliative interventions can provide relief in the short term but may risk treatment dependence without meaningful long-term change in the clinical picture of the claimant." (Stipulated Record, 9.) Because of the risk of treatment dependence without meaningful improvement, Dr. Elwert determined that the requested care was inappropriate.

{¶ 16} Dr. Cartwright's May 25, 2012 report does not address Dr. Elwert's latter conclusion that the requested care was inappropriate. Rather, Dr. Cartwright noted in his report that he had released relator from his care before "with several failed attempts as [relator's] condition worsens and necessitates the need for further care." (Stipulated Record, 13.) This statement seems to support Dr. Elwert's determination that the requested medical care would result in treatment dependence without any meaningful long-term change in relator's physical condition.

{¶ 17} As Dr. Elwert expressed two concerns over Dr. Cartwright's C-9 request, and Dr. Cartwright's May 25, 2012 report only rectified one of Dr. Elwert's two concerns, Dr. Elwert's report remained some evidence which the commission could rely on to deny the C-9 request. Moreover, because Dr. Cartwright's May 25, 2012 report did not address Dr. Elwert's concern regarding the risk of treatment dependence without meaningful improvements, the May 25, 2012 report would not have necessitated a different finding by the SHO in this matter.

{¶ 18} As Dr. Elwert determined that the requested medical services were not necessary for the treatment of the allowed conditions, as the services could result in treatment dependence without meaningful improvements, there was some evidence in the record to support the commission's decision to deny the C-9 request. *Compare Miller* at 232 (finding authorization of funds for a weight loss program appropriate where the weight loss was "geared towards improving the allowed industrial conditions, [and] improvement [was] curative and not merely palliative," noting that it was "not enough that weight loss decreases pain associated with the allowed conditions; [the] weight-loss must actually improve those conditions"); *State ex rel. Brown v. Indus. Comm.*, 10th Dist. No. 02AP-108, 2002-Ohio-4313, ¶ 16.

{¶ 19} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts, and we adopt them as our own. For the reasons set forth in this decision, however, we reject the magistrate's conclusions of law. Instead, we conclude the commission did not abuse its discretion in denying relator's physician's request for authorization of medical services, as Dr. Elwert's report was some evidence which the commission could rely on to reject the C-9 request. As such, we sustain the commission's objection to the magistrate's decision and deny relator's request for a writ of mandamus.

*Objection sustained;*
*writ denied.*

BROWN and SADLER, JJ., concur.

_____

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, ex rel. Joel Almendinger, | : | |
| | : | |
| Relator, | : | |
| | : | No. 12AP-601 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and McGraw Construction Co., | : | |
| | : | |
| Respondents. | : | |

---

## MAGISTRATE'S DECISION

### Rendered on May 20, 2013

---

*Crowley, Ahlers & Roth Co., L.P.A.,* and *Edward C. Ahlers*, for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent.

---

### IN MANDAMUS

{¶ 20} In this original action, relator, Joel Almendinger, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his C-9 request for authorization of chiropractic treatments, and to enter an order granting the request.

Findings of Fact:

{¶ 21} 1. On November 2, 1983, relator injured his lower back while employed with respondent McGraw Construction Co., a state-fund employer. The industrial claim (No. 83-36291) is allowed for "sprain lumbar region; herniated disc L5-S1."

{¶ 22} 2. Over the years, relator has obtained chiropractic care from several chiropractors.

{¶ 23} 3. In May 2011, relator began chiropractic care with Rob Cartwright, D.C.

{¶ 24} 4. On February 1, 2012, Dr. Cartwright completed a C-9 which is a form provided by the Ohio Bureau of Workers' Compensation ("bureau").

{¶ 25} 5. On the C-9, Dr. Cartwright requested authorization of "chiropractic care" once a month for six months.

{¶ 26} 6. The managed care organization ("MCO") denied the C-9 on February 3, 2012.

{¶ 27} 7. Relator administratively appealed the MCO's denial of the C-9.

{¶ 28} 8. Relator's C-9 request prompted the bureau to request a medical review from chiropractor Jeffrey C. Elwert, D.C.

{¶ 29} 9. On February 22, 2012, Dr. Elwert signed a three-page narrative report dated February 21, 2012. His report states:

> **Documents Reviewed:**
>
> Notes from Rob Cartwright, DC
> Notes from Dr. Berner
>
> **Justification for continued care at present level (Miller Criteria)**
>
> [One] Are the medical/other services reasonably related to the industrial injury?        ____Y  x   N
>
> [Two] Are the requested services reasonably necessary for the treatment of the industrial injury?        ____Y  x   N
>
> [Three] Are the costs for the services medically reasonable?
>                                                       ____Y  x   N
>
> **Treatment Modifications/Recommendations:  (Must Complete)**

Claimant sustained a work-related injury on 11/2/83.

MRI of the lumbar spine dated 8/20/96 identifies a right paracentral disc extrusion with inferior migration at L5/S1. This indents the anterior aspect of the dural sac and narrows the lateral recess adjacent to the S1 nerve root.

An IME by Dr. Sullivan is identified on 9/10/10. Injury is described as the claimant was bent over ductwork to pull up a choker. Claimant stood up and took a few steps carrying a choker then bent over to go under a steel beam when he felt pain. Complain[t]s on this date were stiffness in the lower back on the right side, posterior right thigh and posterior right calf pain. Pain is 3/10.

Note from Dr. Berner on 12/21/09 identifies positive Kemps with Lasegue's sign and Braggards test being positive. Limited range of motion was noted at 40-45° of flexion, 10° of extension with 15-20° of right lateral bending and 20-25° of left lateral bending on 1/13/10, 45-50° of flexion was noted with extension of 10-15° with 15-20° of right lateral bending and left lateral bending at 25° with the same orthopedic tests as positive.

Chiropractic note from Dr. Berner on 3/22/11 identifies lower back pain and right leg pain. Lumbar range of motion was 40-45° with pain, extension was 5-10° with right and left lateral bending of 20-25°. Kemps was positive on the right with pain in the lumbosacral area. Lasegue's sign and Braggards tests were positive.

Note from Dr. Cartwright on 5/17/11 identifies low back pain 6/10 and right leg pain at 5/10. Range of motion is 60° of flexion, 20° of extension with right/left lateral bending 20°. Kemps was positive on the right with leg lowering been [sic] positive on the right with positive sacral tenderness, Yeomans, Hibbs, Nachlas and Elys.

Note from Dr. Cartwright on 5/18/11 identifies pain in the lower back at 6/10 with pain in the right leg at 5/10. On 10/4/11, pain was 4/10 in the lower back and right leg. Pain is stiff and sore in the lower back and mid back. On 12/14/11, pain level in the lower back and right leg is 3/10. Positive Kemps is noted. On 1/18/12, pain [in] the lower back is 4/10 with pain in the right leg at 3/10. Note states that the claimant had a flareup [sic] over the holiday.

C9 dated 2/1/12 requesting chiropractic manipulation and therapy to include electrical stimulation and mechanical traction at once per month x 6 months is not medically necessary/appropriate. In review of documentation, treating chiropractor fails to identify symptomatology as specifically related to the claim allowance of a herniated disc. No specifics as to the pain in the right leg. There is no evidence of radicular findings. Treating chiropractor fails to support that subjective complaints and objective findings are consistent with claim allowances. In review of documentation, visits are on a fairly consistent monthly increment indicating regularly scheduled appointments on a supportive care/maintenance basis. As per ODG Guidelines, as with chiropractic care, many passive and palliative interventions can provide relief in the short term but may risk treatment dependence without meaningful long-term change in the clinical picture of the claimant. Treatment has been rendered at the same/similar frequency. The continuation of care as requested would not be deemed appropriate.

{¶ 30} 10. On February 29, 2012, the bureau denied the C-9 request. Relator administratively appealed the bureau's order.

{¶ 31} 11. Following an April 18, 2012 hearing, a district hearing officer ("DHO") issued an order that vacates the bureau's order of February 29, 2012 but also denies the C-9 request. The DHO's order explains:

The C-9 from Dr. Cartwright, dated 02/01/2012, requesting chiropractic treatment, 1x a month for 6 months, beginning 02/01/2012, is denied.

The District Hearing Officer finds that the Injured Worker has not met his burden of proving by a preponderance of the evidence that the requested treatment is reasonably related and medically necessary and appropriate for treatment of the allowed conditions in this claim.

The District Hearing Officer finds that the Injured Worker has not presented sufficient persuasive medical evidence from the Injured Worker's treating physician, Dr. Cartwright, establishing that the requested treatment is reasonably related and medically necessary and appropriate for treatment of the allowed conditions in this claim.

Therefore, the C-9 from Dr. Cartwright, dated 02/01/2012, is denied in its entirety.

The District Hearing Officer also relies on the medical review of Dr. Elwert dated 02/22/2012.

{¶ 32} 12. Relator administratively appealed the DHO's order of April 18, 2012.

{¶ 33} 13. On May 25, 2012, Dr. Cartwright wrote:

I am appealing the medically necessary care to Mr. Joel Almendinger. This is directly related to his injuries as noted above. This is based upon an exacerbation to lumbar herniated disc and lumbar sprain / strain. He has been having pain in this area initially since this initial accident. Joel continues to function and this treatment keeps him stable through his lumbar spine preventing surgery. I would submit the fact that three of Joel's previous physicians have all recommended surgery which Joel has been able to avoid by seeking treatment at our office on an as needed basis. It should also be noted Joel testified to this during his last hearing. Joel has had many complicating factors and multiple area of diagnosis from this injury in which I will prove with additional worksheet and from extent of injuries this is a complicated case. Orthopedic tests were positive, and atrophy and weakness were present in the allowed related soft tissue musculature. I presented in the complicating factors in which I will provide again when I sent the C9 in and explained all the issues which have delayed treatment. He is currently doing better by 75% in pain and function, and 50% better in increased strength. We have released him with several failed attempts as his condition worsens and necessitates the need for further care. His outcomes have improved and he continues to faithfully do home exercises, stretches, walk on the treadmill every day, etc. The above claim is entirely based upon Miller Criteria and professional opinion, and a high degree of chiropractic certainty and probability. This is directly related to the allowed conditions in the claim and is casually [sic] related and cost effective.

{¶ 34} 14. On April 25, 2012, relator executed an affidavit stating:

[One] I am Joel Almendinger, claimant in Ohio Workers' Compensation claim 83-36291.

[Two] Since my work injury on November 2, 1983, I have had persistent back pain and I have as well experienced pain running down into my legs, especially my right leg.

[Three] I have had conversations over the years with physicians about the possibility of surgery, but I do not want surgery and I have done my best to try to avoid the need for surgery.

[Four] In an effort to avoid surgery, and in an effort to avoid having to take narcotic pain medication on a regular basis, I have over the years relied upon chiropractic care which I have found to be very helpful.

[Five] My chiropractors, Dr. Gary Berner and Rob Cartwright, have spoken with me about the importance of doing home exercises, including stretches, and I have been and continue to do these on a regular basis; I also try to walk as much as possible, including walking on a treadmill at my home.

[Six] I do still continue to have significant problems with my back and although I have been doing fairly well in general for the past few years, I do have bad days when I have increased pain, which is very limiting.

[Seven] Over the past couple of years or more, I have had authorization in my workers' compensation claim for a fairly limited number of visits both with Dr. Berner and with Dr. Cartwright.

[Eight] I have tried to use the authorized visits as wisely as I could, meaning that I try to go at times when I really feel that I need to go.

[Nine] I have not been scheduling my appointments ahead of time; [r]ather, I will call on a day when I feel that I need to go in for a visit and my chiropractor's office will then try to work me in to their schedule.

[Ten] I have found chiropractic treatment to be extremely helpful in keeping my pain level under decent control and in allowing me to function fairly well in general.

{¶ 35} 15. Following a June 11, 2012 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO explains:

> The Injured Worker's motion requesting authorization of chiropractic treatment at the rate of one treatment per month for six months is denied.
>
> The Staff Hearing Officer finds that the requested chiropractic treatment is not appropriate or necessary for the treatment of the allowed conditions based upon the report of Dr. Elwert dated 02/22/2012.

{¶ 36} 16. On July 6, 2012, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 11, 2012.

{¶ 37} 17. On July 17, 2012, relator, Joel Almendinger, filed this mandamus action.

Conclusions of Law:

{¶ 38} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 39} Finding that the treating chiropractor, Dr. Cartwright, "fails to identify symptomology as specifically related to the claim allowance of a herniated disc" and that he "fails to support that subjective complaints and objective findings are consistent with claim allowances," Dr. Elwert recommended denial of the C-9 request for authorization of chiropractic treatments.

{¶ 40} Finding that Dr. Cartwright failed to connect the requested chiropractic treatments to the allowed conditions, and also relying upon Dr. Elwert's report, the DHO denied the C-9 request.

{¶ 41} Following the issuance of the DHO's order, Dr. Cartwright endeavored in his May 25, 2012 report, to address the DHO's concern, as expressed in Dr. Elwert's report, that Dr. Cartwright had failed to relate symptomology to the allowed herniated disc.

{¶ 42} In fact, in his May 25, 2012 report, Dr. Cartwright lists the claim number and describes the claim allowances. He starts the body of his report by opining that the requested chiropractic treatments are "directly related to his injuries" and "[t]his is based upon an exacerbation to lumbar herniated disc and lumbar sprain/strain." Dr.

Cartwright finishes the first paragraph of his report by opining that the requested chiropractic treatments are "directly related to the allowed conditions in the claim."

{¶ 43} In short, Dr. Cartwright, in his May 25, 2012 report, directly answers the concerns that Dr. Elwert raised in his February 21, 2012 report. With the issuance of Dr. Cartwright's May 25, 2012 report, it can no longer be said that Dr. Cartwright has failed to relate symptomology to the allowed conditions. Consequently, the SHO cannot continue the reliance upon Dr. Elwert's report to support the SHO's stated proposition that "the requested chiropractic treatment is not appropriate or necessary for the treatment of the allowed conditions." With the issuance of Dr. Cartwright's May 25, 2012 report, Dr. Elwert's report is no longer some evidence that can support a finding that the C-9 is deficient because of a failure to relate symptomology to the allowed conditions of the claim.

{¶ 44} Therefore, it was an abuse of discretion for the SHO to find that "requested chiropractic treatment is not appropriate or necessary for the treatment of the allowed conditions" based upon Dr. Elwert's report.

{¶ 45} Moreover, the SHO's order strongly suggests that the May 25, 2012 report of Dr. Cartwright was not considered. There is no mention of the report in the SHO's order. When the commission fails to consider relevant evidence submitted to it, its order adjudicating the issue cannot stand. *See State ex. rel. Scouler v. Indus. Comm.,* 119 Ohio St.3d 276, 2008-Ohio-3915; *State ex rel. Donohoe v. Indus. Comm.,* 10th Dist. No. 08AP-201, 2010-Ohio-1317, *affirmed* 130 Ohio St.3d 390, 2011-Ohio-5798; *State ex rel. Gonzalez v. Lewis Tree Serv. Inc.,* 10th Dist. No. 10AP-755, 2011-Ohio-6816.

{¶ 46} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the June 11, 2012 order of its SHO, and to enter an order consistent with this magistrate's decision.


/s/ *Kenneth W. Macke*
KENNETH W. MACKE
MAGISTRATE

**NOTICE TO THE PARTIES**


**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**