[Cite as *State ex rel. Cartnal v. Indus. Comm.*, 2013-Ohio-5297.]

IN THE COURT OF APPEALS OF OHIO

TENAPPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Roger J. Cartnal, | : | |
| Relator, | : | |
| | : | No. 12AP-963 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and Custom Personnel, Inc., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 3, 2013

*Copp Law Offices,* and *Shawn M. Wollam,* for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Roger J. Cartnal, commenced this original action, naming as respondents the Industrial Commission of Ohio ("commission") and his former employer, Custom Personnel, Inc. Relator requests a writ of mandamus ordering the commission to vacate its order denying his motion for permanent partial disability compensation pursuant to R.C. 4123.57(B), based on total loss of use of his right foot.

{¶ 2} This court assigned the matter to a magistrate, pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued a decision, which is appended hereto, which includes findings of fact and conclusions of law. The magistrate recommended that we deny the requested writ of mandamus.

{¶ 3}   For the reasons that follow, we adopt as our own the magistrate's decision, including the findings of fact and conclusions of law.  Relator has not demonstrated that he is entitled to a writ of mandamus ordering the commission to vacate its denial of his motion for total-loss-of-use compensation.

## I.  The Facts

{¶ 4}   The magistrate correctly summarized the underlying facts and the proceedings in the commission. *See* Magistrate's Findings of Fact, infra, at ¶ 26-42.   In short, in 2011, the commission allowed relator's worker's compensation claim for, e.g., right foot drop.   On March 1, 2012, relator filed a motion asking for additional compensation, pursuant to R.C. 4123.57(B), for total loss of use of his right foot.

{¶ 5}   Ultimately, the commission received medical records from several doctors, who described relator's ability to use his right foot.  Two doctors reported a loss of function of the foot but also reported that relator is able to walk and that his walking improves when he uses a brace.

{¶ 6}   A district hearing officer ("DHO") first heard, and granted, relator's motion for scheduled compensation for total loss of use his foot. A staff hearing officer ("SHO") reviewed the evidence, including the reports of the physicians, and found that, "although there are some things that can't be done with his foot, [relator] still retains the ability to walk." (Sept. 21, 2012 order, 2.)  At an August 29, 2012 hearing, the SHO observed relator walk independently into and out of the hearing room. On that day, relator was using a soft ankle brace. Consistent with precedent from this court established in *State ex rel Richardson v. Indus. Comm.*, 10th Dist. No. 04AP-724, 2005-Ohio-2388, the SHO reversed the DHO and found that relator does not have a total loss of use of his foot as he retains the ability to walk.

{¶ 7}   The commission refused to hear further appeal of the SHO's order.

## II. The Magistrate's Decision

{¶ 8}   The magistrate determined that "the commission did not abuse its discretion when it determined that relator had not demonstrated a total loss of use of his foot * * *  [as] all the medical evidence indicates that relator is able to walk with the use of [a] foot brace." (Magistrate's Decision, ¶ 61.)

{¶ 9}    The magistrate acknowledged that the commission had allowed additional right-foot conditions during the period between the DHO's order and the SHO's order. She found, however, that the SHO's failure to list those newly allowed conditions, or consider those conditions, while erroneous, did not preclude the commission from refusing to award relator total-loss-of-use compensation. She concluded that, "[a]bsent medical evidence from relator that the allowance of those new conditions now renders his ability to use the [foot] brace impossible, relator has still failed to present evidence to support a loss of use award."  (Magistrate's Decision, ¶ 64.)

{¶ 10}  Accordingly, the magistrate recommended that this court deny relator's request for a writ of mandamus.

### III. Relator's Objections

{¶ 11}  Relator filed objections to the magistrate's decision, as follows:

> I.  RELATOR OBJECTS TO THE MAGISTRATE'S DETER-MINATION THAT THE CAPACITY TO WALK IS A *PER SE* DISQUALIFICATION FROM A STATUTORY LOSS OF FOOT AWARD; WHILE AMBULATION IS AN IMPORTANT INDI-CIA OF RESIDUAL FUNCTIONAL CAPACITY TO BE WEIGHED BY AN OPINING PHYSICIAN, LESS THAN NORMAL AMBULATION COUPLED WITH OTHER SE-VERE FINDINGS AND LIMITATIONS MAY SUPPORT A LOSS OF USE FOR "*ALL PRACTICAL INTENTS AND PUR-POSES*".

> II. QUALIFICATION FOR A SCHEDULED LOSS DAMAGE AWARD IS NOT PREMISED ON "A CLAIMANT'S ABILITY TO WORK" BUT, RATHER, ON THE ANATOMICAL "LOSS OF FUNCTION." RELATOR OBJECTS TO THE MAGI-STRATE'S CONTRARY CONCLUSION AT PAGE 10 OF HER DECISION.

> III.  RELATOR  OBJECTS  TO  THE  MAGISTRATE'S CONCLUSION AT PAGES 10 & 11 THAT THE SHO'S FAILURE TO CONSIDER ALL ALLOWED CONDITIONS IS AN  ABUSE  OF  DISCRETION  WHICH  "DOES  NOT WARRANT THE GRANTING OF A WRIT OF MANDAMUS" AND  THAT  RELATOR  COULD  HAVE  SOUGHT  NEW MEDICAL [SIC] AND RECONSIDERATION FROM THE COMMISSION.

(Emphasis sic.)

## IV.  Analysis

### A. *First Objection—Capacity to Walk*

{¶ 12}  In his first objection, relator argues that the magistrate erred in finding that his ability to walk using his right foot precluded a finding that he had not experienced total loss of use of his foot.

{¶ 13}  The SHO relied on our decision in *Richardson* in finding that relator had not provided evidence of a total loss of use of his right foot.  As in this case, the claimant in *Richardson* sought a scheduled loss award for total loss of use of one of his feet.  The claimant was, however, able to ambulate with the use of a foot-drop brace.

{¶ 14}  We observed in *Richardson* that the Supreme Court of Ohio has held that the existence of "some residual utility" of a body part does not preclude total-loss-of-use compensation.  *Id.* at ¶ 3, citing *State ex rel. Alcoa Building Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.  That holding was consistent with an earlier Supreme Court holding that "scheduled loss awards under R.C. 4123.57(B) include situations where the loss is 'to the same effect and extent as if [the body part] had been amputated or otherwise physically removed.' " *Richardson* at ¶ 4, quoting *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403 (1979). In *Richardson*, we observed that an examining physician had determined Richardson's foot remained capable of bearing weight.  We found that a paramount use of a foot is to use it for walking.

{¶ 15}  In the case before us, both the SHO and the magistrate correctly applied our precedent in *Richardson.*  Relator's arguments that *Richardson* was incorrectly decided is not persuasive.  *See also State ex rel. Bushatz v. Indus. Comm.*, 10th Dist. No. 10AP-541, 2011-Ohio-2613 (denial of total-loss-of-use compensation held appropriate in light of evidence that claimant was still able to bear weight on the foot and could walk, albeit with a limp).

{¶ 16} Relator points to the April 25, 2012 report of Ralph G. Rohner, M.D., who had examined relator. Dr. Rohner  answered "yes" to the question whether "the allowed injury resulted in total, permanent loss of use, to such a degree that the affected body part is useless for all practical purposes, that is, the body part though present is not capable of performing most of the functions for which it commonly performs as a result of the

allowed conditions in this claim." However, that question did not reflect the standard established in *Richardson* for determining whether total loss of use had been sustained. That standard is, as follows: "[W]hen a claimant seeks a scheduled loss award, the proper inquiry is whether, taking into account both medical findings and real functional capacity, the body part for which the scheduled loss award is sought is, for all practical purposes, unusable to the same extent as if it had been amputated or otherwise physically removed." *Richardson* at ¶ 7. Relator has not demonstrated that he has suffered permanent loss of use of his foot "for all practical intents and purposes," as that term was used in *Alcoa* and *Richardson*, despite Dr. Rohner's medical opinion. Although relator clearly had suffered a reduction in his ability to use his foot, he could still use his foot for one of its "paramount purposes," i.e., using it to walk. *Id.* at ¶ 10. Furthermore, we note the SHO relied on the reports of Robyn G. Stanko, M.D., and Teresa Kay Larsen, D.O., as well. Dr. Stanko reported that relator stated not only that he can walk but also that he can drive a car. She also observed that relator can ambulate independently and is able to do a sit-to-stand transfer independently. Dr. Larsen also stated that relator is driving and successfully wearing his AFO brace.

{¶ 17} Accordingly, the commission did not abuse its discretion in finding that the relator had not sustained a total loss of use of his right foot. Relator's first objection to the magistrate's decision therefore lacks merit and is overruled.

### B. *Second Objection—Ability to Work*

{¶ 18} In his second objection, relator contends that the magistrate erred in basing her decision on the fact that relator retained an ability to work. He contends that the magistrate improperly premised her decision on relator's ability to work, rather than on the anatomical loss of function of his foot.

{¶ 19} We have reviewed the magistrate's decision, however, and cannot find any statements in it that supports relator's assertion that the magistrate's decision rests on consideration of relator's ability to work. It is true that the magistrate stated that "[i]t is the responsibility of the commission to determine disability, which is the effect that the physical impairment has on a claimant's ability to work." (Magistrate's Decision, ¶ 60.) However, the statement, in context, simply provided general background information concerning the differing responsibilities of examining physicians, as opposed to the

commission in worker's compensation disability cases. Immediately following the above-quoted statement, the magistrate observed that "[t]o the extent that a doctor confuses the term impairment with disability, it is understood that the medical provider has offered an opinion as to impairment and not disability." (Magistrate's Decision, ¶ 60.) *State ex rel. Stephenson v. Indus. Comm.,* 31 Ohio St.3d 167 (1987).

{¶ 20} It is clear that the magistrate's decision, viewed in its totality, rests on application of our precedent in *Richardson*. We reject relator's contention that the magistrate determined this cause based on considerations relative to relator's ability to work.

{¶ 21} Relator's second objection to the magistrate's decision lacks merit and is overruled.

### C. *Third Objection—SHO's Failure to Consider All Allowed Conditions*

{¶ 22} Relator in his third objection argues that the commission abused its discretion in not specifically addressing newly recognized allowed conditions, arguing that it is the commission's statutory duty to consider all allowed conditions when making a disability determination. However, while the magistrate correctly recognized the commission's duty to list the newly allowed conditions, she also correctly determined that relator still failed to present evidence to support a loss-of-use award.

{¶ 23} Relator's third objection to the magistrate's decision lacks merit and is overruled.

## V. Conclusion

{¶ 24} We have independently reviewed the record and overrule all three of relator's objections. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. The commission did not abuse its discretion in denying total-loss-of-use compensation. We therefore deny relator's request that we issue a writ of mandamus.

*Objections overruled; writ denied.*

O'GRADY and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under the authority of Ohio Constitution, Article IV, Section 6(C).

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel. Roger J. Cartnal,        :

        Relator,                                :
                                  No.  12AP-963

v.                                             :

                                    (REGULAR CALENDAR)

Industrial Commission of Ohio and              :
Custom Personnel, Inc.,

                              :

        Respondents.

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 21, 2013

---

*Copp Law Offices,* and *Shawn M. Wollam,* for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 25} Relator, Roger J. Cartnal, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his motion seeking a total loss of use award for his right foot and ordering the commission to find that he is entitled to that award.

<u>Findings of Fact</u>:

{¶ 26} 1. Relator sustained a work-related injury on January 12, 2011 and his workers' compensation claim was allowed for the following conditions:

> Posterior dislocation right hip closed; fracture right femur; fracture right acetabulum closed; parieto-occipital left scalp laceration; contusion left parieto-occipital scalp; abrasion of bilateral lower leg; contusion bilateral lower leg; sciatic nerve neuropathy right; right foot drop.

{¶ 27} 2. On March 1, 2012, relator filed a C-86 motion asking that he be granted a total loss of use of his right foot pursuant to R.C. 4123.57(B). In support of his motion, relator included the September 26, 2011 report of Teresa Kay Larsen, D.O., who provided an independent evaluation. Dr. Larsen identified and discussed the medical records which she reviewed as well as her physical findings upon examination and her observations of relator's ability to walk. Specifically, Dr. Larsen noted:

> His gait without the AFO demonstrates a significant right foot drop, which is corrected with use of the AFO.

{¶ 28} Thereafter, Dr. Larsen concluded that relator's conditions of right foot drop and sciatic neuropathy had not yet reached maximum medical improvement ("MMI"). She did not offer an opinion as to his loss of use.

{¶ 29} 3. Relator also included the February 14, 2012 report of Robyn G. Stanko, M.D. Dr. Stanko indicated that relator provided him with the following relevant information concerning relator's abilities to use his right foot:

> Mr. Cartnal states he can drive a car. He states he can walk in a grocery store if he holds on to a cart. He states his walking tolerance is 15-20 minutes. * * * Mr. Cartnal states he does have a plastic AFO for his right foot, however it is uncomfortable and the arch portion of the AFO is irritating his foot.

Thereafter, with regard to his own observations, Dr. Stanko stated:

> He is able to ambulate independently and did wear a soft right ankle brace today. Balance is normal and he is able to do a sit-to-stand transfer independently. Without the brace he demonstrates a marked dropfoot and he has to compensate by lifting up his entire right leg so that his right foot clears the next step.

Dr. Stanko ultimately concluded that relator had reached MMI for all of the allowed conditions in his claim, he could not return to his previous work activity, and recommended the following concerning relator's right foot:

> I feel Mr. Cartnal will always need a plastic AFO for the right foot on a permanent basis. He indicates that his current AFO is not fitting well and this AFO may need adjustment by an orthotist so that it properly fits his right foot.

Dr. Stanko did not offer an opinion as to relator's loss of use.

{¶ 30} 4. Relator was examined by Ralph G. Rohner, Jr., M.D. In his April 25, 2012 report, Dr. Rohner identified the medical records which he reviewed and, upon physical examination of relator, noted the following:

> He is ambulatory with a drop-foot brace and a markedly abnormal gait on the right.

Dr. Rohner was specifically asked the following question:

> In your medical opinion, has the allowed injury resulted in total, permanent loss of use, to such a degree that the affected body part is useless for all practical purposes, that is, the body part though present is not capable of performing most of the functions for which it commonly performs as a result of the allowed conditions in this claim? Be specific.

Dr. Rohner responded as follows:

> Yes. Although the foot is functional in terms of allowing him to ambulate, the degree of impairment prevents him from normal ambulation, climbing, crawling, stooping, squatting, running. This degree of impairment also quickly fatigues the rest of the leg.

{¶ 31} 5. In an order mailed May 18, 2012, the Ohio Bureau of Workers' Compensation ("BWC") referred relator's motion to the commission for consideration.

{¶ 32} 6. Relator's motion was heard before a district hearing officer ("DHO") on June 15, 2012. The DHO relied upon the report of Dr. Rohner and granted relator's request for a total loss of use of his right foot as follows:

> The Injured Worker is awarded 150 weeks of compensation under R.C. 4123.57(B) for total loss of use of the right foot. This award is based upon Dr. Rohner's 04/25/2012 report wherein he stated that the Injured Worker's right foot impairment prevents him from normal ambulation, climbing, crawling, sto[o]ping, squatting and running. Dr. Rohner stated that for all practical purposes the right foot is useless.

The fact that the Injured Worker can briefly stand or briefly walk with his right foot is not found to prevent this award. As indicated because Dr. Rohner stated that the Injured Worker for all practical purposes cannot use this foot, that opinion is found sufficiently persuasive to grant this award.

The start date for the award is 04/25/2012, the date of Dr. Rohner's report.

{¶ 33} 7. Both the BWC and respondent Custom Personnel, Inc. appealed and a hearing was held before a staff hearing officer ("SHO") on August 29, 2012. The SHO vacated the prior DHO order and ultimately denied relator's request for total loss of use of his right foot. First, the SHO observed the following:

The Staff Hearing Officer finds that the foot is NOT useless for all practical purposes. The Staff Hearing Officer observed the Injured Worker walk into and out of the hearing room without the use of a cane or walker, without holding on to anything, and without any person physically assisting him. He walked at a normal pace, he did not move slowly. He was walking this day using a soft ankle brace. Normally he uses an AFO, ankle-foot orthosis, which is molded out of hard plastic.

(Emphasis sic.)

{¶ 34} Thereafter, the SHO noted that neither Drs. Larsen nor Stanko, upon whose reports relator's motion was based, gave an opinion as to his functional loss of use. As such, the SHO noted that none of relator's evidence supported his motion.

{¶ 35} Thereafter, the SHO discussed the report of Dr. Rohner, stating:

The Injured Worker was then seen by Dr. Ralph Rohner on 04/25/2012, who was asked as to whether the Injured Worker has total, permanent loss of use, to such a degree that the affected body part is useless for all practical purposes, that is, the body part though present is not capable of performing most of the functions for which it commonly performs. He responded, "Yes, although the foot is functional in terms of allowing him to ambulate, the degree of impairment prevents him from normal ambulation, climbing, crawling, stooping, squatting, running. The degree of impairment also quickly fatigues the rest of the leg."

{¶ 36} Ultimately, the SHO concluded that, pursuant to relevant case law, relator had not sustained a total loss of use of his right foot and denied the motion, stating:

> The Staff Hearing Officer finds that although there are some things that can't be done with his foot, the Injured Worker still retains the ability to walk which the Staff Hearing Officer would find is the main function of the foot. In <u>Richardson v. Industrial Commission.</u>, NO. 04AP-724, 10th DIST. (2005), it was stated "The court cannot imagine a more paramount use for a foot than the activity of walking". In that case, the court upheld the Commission's denial of a total loss of use when the Injured Worker could walk with the aid of a brace.
>
> The Staff Hearing Officer finds that all of the physician reports agree that the Injured Worker is able to walk with the use of his AFO brace. This order relies upon the reports of Drs. Larsen, Stanko, and Rohner to support this decision. Since those reports all show that the Injured Worker is able to walk with a brace they support this decision that the Injured Worker does **NOT** have a total loss of use of the foot.

(Emphasis sic.)

{¶ 37} 8.  In an order mailed October 17, 2012, relator's appeal was refused.

{¶ 38} 9.  In between the time that the DHO granted claimant's motion and the SHO denied his motion, relator filed a motion asking that his workers' compensation claim be allowed for the following additional conditions:

> Deformity Ankle [and] Foot Other A[c]quired.
> Plantar flexion contracture[.]

{¶ 39} 10.  In support of his motion, relator filed office notes from his treating physician Robert A. Martin, M.D.  Although those office notes do discuss new complaints relator was experiencing concerning his right foot, none of those office notes addressed the issue of loss of use.

{¶ 40} 11.  In an order mailed July 31, 2012, the BWC granted relator's motion and additionally allowed his claim for the following conditions:

> Deformity Ankle/Foot Other Acquired
> Plantar Flexion Contracture

{¶ 41} 12.  The BWC order was specifically based on Dr. Martin's June 29, 2012 office note.

{¶ 42} 13.  Thereafter, relator filed the instant mandamus action in this court.

<u>Conclusions of Law</u>:

{¶ 43} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 44} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 45} In order to qualify for a loss of use award, relator was required to present medical evidence demonstrating that, for all intents and purposes, he had lost the use of his left upper extremity. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

{¶ 46} In *Alcoa*, at ¶ 10, the court set forth the historical development of scheduled awards for loss of use under R.C. 4123.57(B) as follows:

> Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190—construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 47} In *Alcoa*, the claimant, Robert R. Cox, sustained a left arm amputation just below his elbow. Due to continuing hypersensitivity at the amputation site, Cox was prevented from ever wearing a prosthesis. Consequently, Cox filed a motion seeking a scheduled loss of use award for the loss of use of his left arm.

{¶ 48} Through videotape evidence, Alcoa established that Cox could use his remaining left arm to push open a car door and to tuck paper under his arm. In spite of this evidence, the commission granted Cox an award for the loss of use of his left arm.

{¶ 49} Alcoa filed a mandamus action which this court denied. Alcoa appealed as of right to the Supreme Court of Ohio.

{¶ 50} Affirming this court's judgment and upholding the commission's award, the Supreme Court explained, at ¶ 10-15:

> Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.
>
> Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker.*
>
> Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered

the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

"Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

"It is my belief that given the claimant's residual hyper-sensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."

{¶ 51} In the present case, the SHO cited this court's decision in *State ex rel. Richardson v. Indus. Comm.,* 10th Dist. No. 04AP-724, 2005-Ohio-2388, and found that relator had not demonstrated that he had sustained a total loss of use of his right foot because all the medical evidence submitted demonstrated that relator was still able to walk.

{¶ 52} Relator contends that this court misapplied the standard from *Alcoa* and asserts that, under the "all practical intents and purposes test," it is possible to demonstrate a total loss of use while still retaining some ability to walk. Relator contends that this court is, in essence, applying an "absolute equivalency" test which was specifically rejected in *Alcoa.* For the reasons that follow, the magistrate disagrees.

{¶ 53} In *Richardson*, this court applied *Alcoa* to a claim seeking a loss of use award for the claimant's left foot. This court concluded that "the proper inquiry is whether, taking into account both medical findings and real functional capacity, the body

part for which the scheduled loss award is sought is, for all practical purposes, unusable to the same extent as if it had been amputated or otherwise physically removed." *Richardson* at ¶ 7.

{¶ 54} The claimant in *Richardson* suffered chronic pain, numbness, weakness, and lack of flexion in his left foot, along with a significant limp, but was able to walk with the help of a brace. *Id.* at ¶ 8-9. This court noted that it could not "imagine a more paramount use for a foot than the activity of walking." *Id. ¶ 10.*

{¶ 55} This court re-examined the issue in *State ex rel. Bushatz v. Indus. Comm.,* 10th Dist. No. 10AP-541, 2011-Ohio-2613. In that case, the Ronald Bushatz's claim was allowed for left drop foot and he filed a motion seeking a total loss of use award. Dr. Renneker opined that Bushatz was entitled to an award of total loss of use of his left ankle and foot due to the following:

> (1) [N]o volitional motion is noted at left ankle, left great toe, nor left 4 small toes (2) absent pin prick sensation distal to left ankle i.e. throughout entire left foot, and (3) absent left ankle deep tendon reflex.

*Id.* at ¶ 10.

{¶ 56} The record also included evidence that Bushatz was able to walk provided that he wore a foot-drop brace. Ultimately, because the Bushatz retained the ability to walk with the brace, the commission concluded that he had not sustained a total loss of use of his left foot.

{¶ 57} Bushatz filed a mandamus action in this court; however, this court upheld the commission's decision.

{¶ 58} More recently, in *State ex rel. Richardson v. Indus. Comm.,* 10th Dist. No. 11AP-678, 2012-Ohio-5660, Pamela Richardson sustained a work-related injury and her claim was allowed for left foot drop. Richardson filed an application seeking a total loss of use award submitting medical evidence indicating that she could not walk on her left foot without the use of her custom brace. This court found that the commission did not abuse its discretion when it denied her a total loss of use award after finding that the commission had properly applied the standard from *Alcoa.*

{¶ 59} The same situation is present here as was present in the aforementioned cases. All the medical reports in the record, as well as the SHO's own observations,

indicate that relator retains the ability to walk with the use of the foot brace. While Dr. Rohner did opine that, in his opinion, relator should be granted a total loss of use award, Dr. Rohner also indicated that relator retained the ability to walk with the foot brace. Similarly, Dr. Renneker had opined that Bushatz was entitled to a total loss of use award despite the fact that he was able to walk with the foot brace. Both Drs. Rohner and Renneker noted their physical findings and further, noted that their patients could walk with the aid of a foot brace. Both doctors concluded that, in their opinions, despite their patients' ability to walk, they had sustained a total loss of use. In both cases, the commission determined that a total loss of use award was not in order.

{¶ 60} It is the responsibility of doctors to determine impairment which is the loss of function. It is the responsibility of the commission to determine disability, which is the effect that the physical impairment has on a claimant's ability to work. To the extent that a doctor confuses the term impairment with disability, it is understood that the medical provider has offered an opinion as to impairment and not disability. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).

{¶ 61} The magistrate finds that the commission did not abuse its discretion when it determined that relator had not demonstrated a total loss of use of his foot. The commission applied the proper standard and, where all the medical evidence indicates that relator is able to walk with the use of the foot brace, relator has not demonstrated a total loss of use of the foot.

{¶ 62} Relator also contends that, once his claim was allowed for new conditions, the commission should have reviewed that evidence and, if the commission would have done so, then the commission would have granted a total loss of use award. For the reasons that follow, the magistrate disagrees.

{¶ 63} Following the hearing before the DHO, relator's claim was allowed for additional right foot conditions. Relator contends that the commission abused its discretion when the SHO did not list those newly allowed conditions and did not consider the effect those conditions had on his application for a total loss of use award.

{¶ 64} On the one hand, relator is correct to argue that the commission should have listed the newly allowed conditions in its order and its failure to do so constitutes an abuse of discretion. However, despite relator's arguments to the contrary, the

commission's failure to do so does not warrant the granting of a writ of mandamus compelling the commission to grant him a loss of use award. While relator continues to argue that the commission and this court have applied an incorrect standard in determining loss of use in these foot drop cases, relator is simply incorrect. Further, as explained previously, Dr. Rohner's report does not support a total loss of use award because Dr. Rohner specifically indicated that relator was able to use his foot to walk with the aid of the foot brace. As the SHO stated, relator failed to present sufficient evidence that he had sustained a total loss of use of his right foot. The fact that his claim was allowed for additional conditions did not change the state of the evidence before the commission. Absent medical evidence from relator that the allowance of those new conditions now renders his ability to use the brace impossible, relator has still failed to present evidence to support a loss of use award.

{¶ 65} Further, relator could have requested that the commission send him for a new medical examination after his claim was allowed for new conditions. Relator did not do so. Likewise, relator could have sought reconsideration on grounds that the SHO did not properly consider all the allowed conditions. Pursuant to *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), relator cannot raise an argument here that he failed to raise administratively. And again, the record still lacks any evidence that relator's allowed conditions prevent him from walking.

{¶ 66} Based on the foregoing, while the magistrate does find that the commission abused its discretion by not listing the newly allowed conditions in the commission's order, the commission, nevertheless, did not abuse its discretion when it denied relator's motion seeking a loss of use award because the medical evidence in the record does not support such a finding. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).