DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, The Kroger Company, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("commission"), to vacate its order which granted permanent total disability ("PTD") compensation to respondent, Anne B. Paysen ("claimant"), and ordering the commission to find that claimant is not entitled to PTD compensation because relator made a modified job offer which claimant refused. In the alternative, relator contends that the commission abused its discretion by relying on deficient medical reports and, further, that the commission's hearing officer based his findings on his own sympathetic opinion.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Section M, Loc.R. 12 of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator has submitted the following objections to the magistrate's decision:
1. The Magistrate erred in finding that The Kroger Company's written job offer of 1999 did not remain in effect at the time of Claimant's second permanent total disability hearing, thus finding that Kroger had not made a bonafide job offer.
2. The Magistrate erred in finding that the reports of Drs. Rohner and Cottrell, relied upon by the Industrial Commission, were probative. The doctors did not distinguish allowed and unallowed conditions, and the Magistrate ignored contemporaneous office notes which indicated both doctors considered unallowed conditions in their impairment findings.
 {¶ 4} In its objections to the magistrate's decision, relator makes the same arguments previously briefed and addressed by the magistrate in her decision. The findings of fact show that relator last corresponded with claimant with regard to a job offer in 1999, which preceded the date when the commission allowed relator's additional claim for "panic disorder." The magistrate appropriately found that relator's modified job offer failed to meet the requirements of Ohio Adm. Code 4121-3-34(D), which requires that there be a written job offer detailing the specific physical/mental requirements and duties of the job that are within the physical/mental capabilities of the claimant and that the offer must be made prior to the pre-hearing conference. Since the job offer was last made to claimant in 2001, prior to claimant's claim being additionally allowed for panic attacks, it cannot be said that the job offer was within all of claimant's restrictions to the allowed conditions. Furthermore, the "offer" was not in writing which was particularly important in this case since it did not indicate that it was within claimant's capabilities as affected by the additional claim allowed by the occurrence of the "panic attacks." Thus, the magistrate correctly found that there was no modified job offer made and that the commission did not abuse its discretion in addressing this issue since the oral claim that the job offer continued fell far short of the commission's rule.
 {¶ 5} Additionally, relator objects to the magistrate's finding that the commission did not abuse its discretion in relying upon the reports of Drs. Jane E. Cottrell and Ralph G. Rohner, Jr. Dr. Cottrell testified at the hearing, without objection to the testimony nor questioning of the authenticity of the form in which she rendered the opinion, that claimant was permanently and totally disabled based solely upon the allowed conditions. Thus, the magistrate correctly held that the testimony of Dr. Cottrell before the staff hearing officer indicated that she based her opinion on only the allowed conditions. Dr. Rohner stated that claimant was permanently and totally disabled from any gainful employment for which she is otherwise qualified by her age, education, and work experience. He then concluded by stating "given her current clinical status [claimant] is permanently and totally disabled."
 {¶ 6} In summary, we conclude that the magistrate accurately handled the objections posed herein and we agree with the magistrate's conclusions. While it may be argumentatively ambiguous as to whether Dr. Rohner considered factors such as age, education, and work experience as part of the conclusion that she is disabled, we find that it was not an abuse of discretion to interpret it as did the magistrate; however, as pointed out by the magistrate, even if Dr. Rohner's report is removed from evidence, the report testimony of Dr. Cottrell constitutes "some evidence" supporting the granting of PTD compensation.
 {¶ 7} The objections of relator are overruled.
 {¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Petree and McGrath, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. The Kroger Company, : Relator, : v. : No. 04AP-810 Anne B. Paysen and : (REGULAR CALENDAR) The Industrial Commission of Ohio, Respondents. : : MAGISTRATE'S DECISION Rendered on February 24, 2005 IN MANDAMUS {¶ 9} Relator, The Kroger Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Anne B. Paysen ("claimant"), and ordering the commission to find that claimant is not entitled to PTD compensation because relator made a bonafide job offer which claimant refused. In the alternative, relator contends that the commission abused its discretion by relying on deficient medical reports and further that the commission's hearing officer based his findings on his own sympathetic opinion.
Findings of Fact:
 {¶ 10} 1. Claimant has sustained two industrial injuries and her claims have been allowed as follows:
Bilateral carpal tunnel syndrome; bilateral cubital tunnel syndrome, reflex sympathic dystrophy of the right wrist; reflex sympathetic dystrophy, left wrist; depressive disorder; panic disorder.
 {¶ 11} 2. Claimant filed her first application for PTD compensation in July 1989. This application was denied by the commission in February 2000. At the time, relator's claim had yet to be allowed for panic disorders.
 {¶ 12} 3. The record indicates that relator began corresponding with claimant in an attempt to get claimant back to work. The job offered by relator was described in a letter dated November 18, 1999, as follows:
* * * The position available would involve miscellaneous duties in the store, including but not limited to: greeting customers and passing out flyers; making returned check calls, or doing other phone work; doing demo work; and other general duties, within your restrictions, as permitted by time and energy. * * *
 {¶ 13} 4. Later, in a September 19, 2001 letter to claimant's treating physician, Dr. Jane E. Cottrell, relator intimated that claimant could work as little or as much as she needs and that the work would be well within her physical restrictions. At the hearing before the staff hearing officer ("SHO"), a Sally Blubaugh testified that the job last offered to claimant in September 2001 was still available, and Ms. Blubaugh explained the efforts that relator was willing to make for claimant or any other employee in an effort to provide them with a work experience within their restrictions.
 {¶ 14} 5. On August 19, 2003, claimant submitted her second application for PTD compensation, which is the subject of this mandamus action. Claimant's application was supported by the July 1, 2003 report of her treating physician, Dr. Ralph G. Rohner, Jr., who stated as follows:
This letter is dictated in response to your communication on the 24th of June, 2003 regarding Anne Paysen, claim number OD52343-22. Anne Paysen is permanently and totally disabled from the pursuit of substantial gainful employment in any field of endeavor for which she is suited by age, education and work experience. She is disabled by her industrial injuries and the complications thereof.
She has bilateral carpal tunnel syndrome. She has reflex sympathetic dystrophy of the upper extremities, depression and panic disorders. All of these are a result of her industrial injury that would not exist if it had not been for that industrial injury. Therefore, given her current clinical status, she is permanently and totally disabled.
 {¶ 15} 6. Relator also submitted the July 14, 2003 report of Dr. Cottrell, a psychologist, who stated as follows:
You have asked me for my opinion on whether Anne Paysen's current psychological condition would qualify her for Permanent Total Disability. I have believed since 1999 that Ms. Paysen would not be able to work again at any type of employment due to the psychological conditions and the chronic pain from her psychical [sic] disorders allowed in her claim. Now, in 2003, Ms. Paysen's claim is allowed for panic disorder in addition to the depressive disorder for which I was originally seeing her.
Ms. Paysen's physical condition due to RSD (now also called CPS — Complex Pain Syndrome) has continued to deteriorate, although more rapidly during the past two years. Because her physician of record, Dr. Rohner did not feel qualified to enter into prescribing newer psychotropic medications when the older ones were not effective with her, and was not comfortable with prescribing polypharmaceutical therapies, Ms. Paysen has experienced increasing severe psychiatric symptoms of involving phobias in addition to the severe levels of panic disorder and depression we have been attempting to manage with behavioral techniques including relaxation, imaging and knowledge-based insight. Her inability to sleep has taken an every [sic] greater toll on her and panic attacks have become more severe with exhaustion.
Therefore, my opinion is even stronger today than in 1999 that Anne Paysen is Permanently and Totally Disabled from work of any kind, however sedentary or lacking in stress that work may be.
 {¶ 16} 7. The record also contains the August 14, 2003 evaluation form Dr. Cottrell prepared for the Social Security Administration. Her findings were based on the allowed psychological conditions of depressive disorder and panic disorder. Dr. Cottrell noted that claimant has severe depression, frequent crying episodes, a feeling of hopelessness, exhaustion, social withdrawal, feelings of worthlessness and guilt, loss of confidence in herself; that she is unable to think clearly, unable to concentrate, read, or follow television programs; that she feels she is a complete failure as a person; and that she experiences daily panic attacks as well as a fear of dying if she falls asleep. Dr. Cottrell indicated that claimant has a marked interference with her ability to initiate social contact, to cooperate with co-workers or respond without fear to strangers. She noted further that claimant has an extreme interference with her ability to respond to supervision and to those in authority with an extreme interference with her ability to establish inter-personal relationships and to hold a job.
 {¶ 17} 8. The record also contains the November 6, 2003 report prepared by Dr. Robin Stanko, who examined relator with regard to her allowed physical conditions. Dr. Stanko assessed a 45 percent whole person impairment and concluded that claimant could perform activity at sedentary work levels, with lifting no more than ten pounds and with no repetitive power grip, power pinch, or opposition activity with her hands bilaterally.
 {¶ 18} 9. The record also contains the September 30, 2003 report of Dr. Paul T. Hogya, who performed a file review and concluded that relator's allowed conditions do not render her permanently and totally disabled.
 {¶ 19} 10. The record also contains the September 18, 2003 report of Dr. John W. Cunningham, who evaluated claimant and concluded that claimant had reached maximum medical improvement with regard to all of her allowed conditions, and assessed a 50 percent whole person permanent partial impairment. Dr. Cunningham concluded as follows:
* * * A Physical Strength Rating form has been completed on this date and is attached to this report for your review. In my medical opinion, this individual is employable on a non-psychiatric, non-emotional basis in regards to this claim provided she is not asked to repetitively firmly grip, pinch, or grasp objects with either hand. By the term "repetitively", this examiner means in the ergonomic sense of rapid, continuous, repetitive gripping, pinching, or grasping. In my medical opinion, this individual should not be asked to lift, carry, push, pull, or otherwise move objects greater than 5 pounds with each hand alone, or 20 pounds with both upper extremities.
 {¶ 20} 11. An employability assessment was prepared by Mark A. Anderson, who opined that, based upon the reports of Drs. Randolph, Rohner, and Cottrell, relator was not employable. Based upon the reports of Drs. Cunningham, Hogya, Brown, and Stanko, Mr. Anderson listed various jobs which would be within claimant's abilities.
 {¶ 21} 12. Claimant's application for PTD compensation was heard before an SHO on May 14, 2004. The SHO relied upon the reports of Drs. Rohner and Cottrell as well as Dr. Cottrell's report submitted for the Social Security Administration. The SHO noted his own observations as follows:
The Staff Hearing Officer notes that during the permanent total disability hearing, the injured worker cried frequently and when not testifying, looked down in a very depressed manner. From personal observation as well as the just discussed reports the Staff Hearing Officer can not see how the injured worker would be able to perform any type of sustained remunerative employment whatsoever due to her psychological conditions.
 {¶ 22} 13. Relator's motion for reconsideration was denied by order of the commission mailed June 26, 2004.
 {¶ 23} 14. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 25} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 26} Relator raises three arguments in support of its assertion that the commission abused its discretion: (1) the commission failed to take into account the bona fide job offers made to claimant by relator which should preclude her receipt of PTD compensation; (2) the reports of Drs. Rohner and Cottrell do not constitute some evidence upon which the commission could rely; and (3) the commission renders its own medical opinion based upon the hearing officer's observations of claimant. For the reasons that follow, this magistrate disagrees.
 {¶ 27} In its first argument, relator asserts the commission refused to take into account the bona fide job offer made by relator to claimant. As indicated in the findings of fact, the relator last corresponded with claimant with regards to a job offer in 1999. The date of this offer preceded the date when the commission additionally allowed relator's claim for "panic disorder." Relator maintains that it was an abuse of discretion for the commission not to address this issue.
 {¶ 28} Ohio Adm. Code 4121-3-34 provides for the procedures to be followed in the processing of an application for PTD compensation. First, Ohio Adm. Code 4121-3-34(C) provides that an application is to be submitted with accompanying medical evidence from a physician, psychologist or a psychiatric specialist. Thereafter, the employer is notified and has 60 days to submit medical evidence relating to the issue of PTD compensation. Pursuant to Ohio Adm. Code 4121-3-34(C)(5)(a), during the 60 days following the date of the filing of a PTD application, the claims examiner prepares the file for hearing. Pursuant to Ohio Adm. Code 4121-3-34(C)(7), the employer or the claimant may request, for good cause shown, that a prehearing conference be scheduled. At the conclusion of the prehearing conference, a date for hearing before an SHO will be scheduled no earlier than 14 days subsequent to the date of the prehearing conference.
 {¶ 29} Ohio Adm. Code 4121-3-34(D) then provides guidelines for the adjudication of applications for PTD disability. Specifically, relator refers to subparagraph (1)(e), which provides as follows:
If, after hearing, the adjudicator finds that the claimant is offered and refuses and/or fails to accept a bona fide offer of sustained remunerative employment that is made prior to the pre-hearing conference described in paragraph (C)(9) of this rule where there is a written job offer detailing the specific physical/mental requirements and duties of the job that are within the physical/mental capabilities of the claimant, the claimant shall be found not to be permanently and totally disabled.
 {¶ 30} The parties spend a lot of time discussing what constitutes a "bona fide offer of sustained remunerative employment"; however, no one points out that Ohio Adm. Code 4121-3-34(D)(1)(e) provides that that job offer must be made "prior to the pre-hearing conference described in paragraph (C)(9)." Where there is a "written job offer detailing the specific physical/mental requirements and duties of the job that are within the physical/mental capabilities of the claimant," the claimant shall not be found to be permanently and totally disabled. Based upon a clear reading of the regulation, the written job offer would have had to been made from relator to claimant prior to any prehearing conference. That job offer would have had to take into consideration all of the claimant's allowed conditions. Inasmuch as the job offer was last made to claimant in 2001, prior to claimant's claim being additionally allowed for panic attacks, it cannot be said that that job offer was within all of claimant's restrictions due to the allowed conditions. Further, although a representative from the employer testified that the job offer was still available, it cannot be said that this "offer" was in writing, within her capabilities, nor timely. Furthermore, there was evidence in the record that claimant was incapable of any work. As such, there was no bona fide job offer made and the magistrate finds that the commission did not abuse its discretion in addressing this issue.
 {¶ 31} Relator also contends that the medical reports of Drs. Rohner and Cottrell do not constitute some evidence upon which the commission could rely. First, relator contends that it is unclear whether Dr. Cottrell confined her opinion with regards to claimant's allowed condition of Reflex Sympathetic Dystrophy ("RSD") to her upper extremities without considering the nonallowed conditions of RSD to claimant's lower extremities. Relator points out that, at the hearing, Dr. Cottrell had indicated that she did not know anything about the status of claimant's legs. However, when shown her office notes, Dr. Cottrell indicated that she did know that claimant had significant chronic pain in her legs. Relator contends that this contradiction demonstrates that Dr. Cottrell's July 14, 2003 report does not constitute some evidence. However, this magistrate disagrees.
 {¶ 32} In her July 14, 2003 report, Dr. Cottrell specifically indicated that she realized she was being asked her opinion on whether claimant's current psychological condition would qualify her for PTD compensation. Dr. Cottrell indicated that claimant's claim was allowed for the following psychological conditions: depressive disorder and panic disorder. Thereafter, Dr. Cottrell indicated that relator has "severe levels of panic disorder and depression we have been attempting to manage with behavioral techniques including relaxation, imaging and knowledge-based insight."
 {¶ 33} Nothing in Dr. Cottrell's July 14, 2003 report, and nothing in her testimony before the SHO indicates that Dr. Cottrell based her opinion on anything other than the allowed conditions. Instead, her comments during the hearing support a conclusion that her opinion was based solely upon the allowed conditions and that she was not taking into account the RSD not allowed for claimant's legs. As such, having to be reminded, through her office notes, that claimant has complained about the pain in her legs, actually lends credibility to Dr. Cottrell's opinion that claimant is permanently and totally disabled based solely upon the allowed conditions.
 {¶ 34} Relator also challenges an evaluation form submitted by claimant. The form itself is a "Psychiatric Evaluation Form for Affective Disorders" upon which the commission did rely. Relator notes that this form is unsigned and, as such, cannot constitute "some evidence" upon which the commission could rely. {¶ 35} Although, as a general rule, relator is correct for the following reasons, the magistrate finds that this particular form was properly authenticated. Dr. Cottrell testified at the hearing. Relator's attorney specifically stated that this form had been attached to Dr. Cottrell's July 14, 2003 report. Further, counsel asked Dr. Cottrell numerous questions based upon her answers written on this form. Relator did not object to the testimony and did not question the validity of this form as authored by Dr. Cottrell and had the opportunity to cross-exam Dr. Cottrell. As such, the magistrate finds that relator cannot challenge the form's authenticity now.
 {¶ 36} Relator also contends that Dr. Rohner based his opinion, in part, upon nonmedical disability factors. In reviewing Dr. Rohner's two-paragraph report, the magistrate notes that, in the first paragraph, Dr. Rohner notes that claimant "is permanently and totally disabled from the pursuit of substantial gainful employment in any field of endeavor for which she is suited by age, education, and work experience." Thereafter, he concludes his report by saying that "given her current clinical status, [claimant] is permanently and totally disabled." Contrary to relator's assertion, Dr. Rohner does not state something to the following effect: "Based upon her allowed physical conditions and taken into account her age, education and work experience, I find that claimant is permanently and totally disabled." Instead, what Dr. Rohner clearly says is that claimant is permanently and totally disabled from any gainful employment for which she is otherwise qualified by her age, education, and work experience. That is entirely different than considering those factors as part of a conclusion that she is disabled. Even if Dr. Rohner's report is removed from evidence, the report and testimony of Dr. Cottrell constitutes "some evidence" supporting the granting of PTD compensation. The magistrate rejects relator's argument.
 {¶ 37} Lastly, relator challenges the commission's order because the commission hearing examiner gave his own impression of claimant's demeanor during the hearing and infers that the hearing examiner based the granting of PTD compensation upon his own medical opinion of claimant's condition. This magistrate disagrees. The hearing officer specifically listed reports of Drs. Rohner and Cottrell and then noted that claimant's appearance and manner at the hearing provided additional evidence, in his opinion, that she was not capable of working. Hearing officers are entitled to take a claimant's testimony into account when deciding an application for PTD compensation. There is no reason why a hearing examiner could not take the claimant's physical appearance, demeanor and mood into account as well, and note them in the order. Nothing that relator asserts would lead this magistrate to the conclusion that the hearing examiner rendered a medical opinion in this case. As such, this argument of relator is also not well-taken.
 {¶ 38} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in granting the application of claimant for PTD compensation and this court should deny relator's request for a writ of mandamus.