[Cite as *State ex rel. Shephard v. Indus. Comm.*, 2014-Ohio-1744.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Herman Shephard, | : | |
| | : | |
| Relator, | : | |
| | : | No. 13AP-508 |
| v. | : | (REGULAR CALENDAR) |
| The Industrial Commission of Ohio and Ronnie Shephard's Timber, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on April 24, 2014

*Agee, Clymer, Mitchell & Laret, Douglas P. Koppel* and *Robert M. Robinson*, for relator.

*Michael DeWine*, Attorney General, and *Corinna V. Efkeman*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Herman Shephard, filed this original action, naming as respondents the Industrial Commission of Ohio ("commission"), and his former employer, Ronnie Shephard's Timber. Relator requests a writ of mandamus ordering the commission to vacate its order denying his application for permanent total disability ("PTD") compensation and to find that he is entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court deny the request for a writ of mandamus.

{¶ 3} Relator sets forth two objections to the magistrate's decision:

Objection 1:

The Magistrate's Decision errs by failing to follow the Supreme Court's decision in *State ex rel. Yellow Freight System, Inc. v. Industrial* [sic] *Comm. of Ohio*, 81 Ohio St.3d 56 (1998).

Objection 2:

The Magistrate's Decision errs by finding that the rejection of Dr. Roach's report by the SHO was not an abuse of discretion.

{¶ 4} The arguments raised in relator's objections are essentially the same as those raised to and addressed by the magistrate.  In her decision, the magistrate observed that a commission staff hearing officer ("SHO") denied PTD compensation based on a finding that relator was capable of performing some sedentary employment within specified psychological restrictions. The SHO relied on the medical reports of Dr. Brian Higgins, as to relator's physical condition, and Dr. Jennifer Stoeckel, as to relator's psychological condition. The SHO rejected a report by Dr. Lee Roach, concluding that it was not persuasive. As explained in the magistrate's decision, relator generally asserts that the commission was required to accept the findings contained in Dr. Roach's report and that the commission abused its discretion by relying on the reports of Drs. Higgins and Stoeckel.

{¶ 5} In his first objection, relator asserts that the magistrate erred by failing to follow the Supreme Court of Ohio's precedent in *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56 (1998). In *Yellow Freight*, the Supreme Court held that the commission does not have the expertise to determine the cause of a medical condition without medical evidence. *Id.* at 58. Further, this court has held that, while "[t]he commission is free to accept or reject medical opinions of record in determining disability[,] * * * it cannot fashion its own medical opinion from the findings contained in the medical reports such as might be done by a non-examining physician who is asked by

the commission to review the medical evidence of record." *State ex rel. Valentine v. Indus. Comm.*, 10th Dist. No. 02AP-579, 2003-Ohio-1784, ¶ 105.

{¶ 6} Relator argues that, in rejecting Dr. Roach's report, the SHO relied on his own observations, rather than medical evidence in the record. The SHO could not properly rely on his own observations to refute relator's suggestion that he may suffer from mild mental retardation. However, because the SHO relied on the medical evidence in the reports of Dr. Higgins and Dr. Stoeckel, we agree with the magistrate's conclusion that the SHO did not render a medical opinion by referring to his own observations. This court has previously upheld decisions based on medical evidence in which a hearing officer also referred to his or her own observations. *See, e.g., State ex rel. Cartnal v. Indus. Comm.*, 10th Dist. No. 12AP-963, 2013-Ohio-5297, ¶ 59 ("All the medical reports in the record, as well as the SHO's own observations, indicate that relator retains the ability to walk with the use of the foot brace."); *State ex rel. Kroger Co. v. Paysen*, 10th Dist. No. 04AP-810, 2005-Ohio-3787, ¶ 37 (rejecting argument that hearing officer granted PTD compensation based on his own medical opinion, where the hearing officer specifically listed medical evidence relied upon before also noting that the claimant's appearance and manner at the hearing provided additional evidence that she was not capable of working).

{¶ 7} In *Yellow Freight*, the Supreme Court concluded that the commission abused its discretion by awarding temporary total disability compensation because there was no evidence attributing the claimant's disability to his industrial injury. *Yellow Freight* at 57. As the magistrate notes, in this case, there was medical evidence in the record supporting the SHO's denial of PTD compensation. Therefore, we reject relator's objection that the magistrate erred by failing to follow the precedent set by *Yellow Freight*.

{¶ 8} Accordingly, relator's first objection to the magistrate's decision lacks merit and is overruled.

{¶ 9} In his second objection, relator asserts that the magistrate erred by finding that the SHO's rejection of Dr. Roach's report was not an abuse of discretion. Relator argues that Dr. Roach's report was consistent with Dr. Stoeckel's report and that, therefore, the SHO abused his discretion by rejecting Dr. Roach's report.

{¶ 10} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), syllabus. However, this court has previously held that "[t]he commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive." *State ex rel. Almendinger v. Indus. Comm.*, 10th Dist. No. 12AP-601, 2013-Ohio-5103, ¶ 13. As the magistrate explains, the commission was not required to accept Dr. Roach's ultimate conclusion.

{¶ 11} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's two objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.[1] Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled; writ denied.*

SADLER, P.J., and BROWN, J., concur.

_____

[1] In the second sentence of finding of fact No. 14 of the magistrate's decision, the magistrate refers to Dr. Wunder's conclusion. It appears that this should be a reference to Dr. Hawkins' conclusion because Dr. Hawkins' report is the subject of the prior sentence. Subject to this correction, we adopt the magistrate's decision as our own.

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Herman Shephard, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  13AP-508 |
| | : | |
| The Industrial Commission<br>of Ohio and Ronnie Shephard's<br>Timber, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on December 9, 2013

---

*Agee, Clymer, Mitchell, & Laret, Douglas P. Koppel* and *Robert M. Robinson,* for relator.

*Michael DeWine,* Attorney General, and *Corinna V. Efkeman,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 12} Relator, Herman Shephard, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 13} 1. Relator has sustained two work-related injuries during the course of his employment as a logger and his workers' compensation claims have been allowed for the following conditions:

> 96-556947 - Fracture acetabulum-closed, left; posterior dislocated hip-closed, left; enthesopathy of left hip; sciatica; sprain lumbosacral; post-traumatic arthritis left hip; major depressive disorder; generalized anxiety disorder; anxiety induced gastroesophageal reflux disease; L3-4 tear; L4-L5 tear.

> 01-883914 - Sprain of neck; aggravation of degenerative disc disease C3 thru T1; cervical disc displacement; cervical brachial neuritis; cervical spondylosis; aggravation of pre-existing C1-2, C2-3 facet arthropathy.

{¶ 14} 2. Relator last worked in 2001.

{¶ 15} 3. In 2006, relator filed for and began receiving Social Security Disability benefits.

{¶ 16} 4. Relator filed his first application for PTD compensation on May 3, 2010. According to his application, relator graduated from high school in 1979, could read, write, and perform basic math, but not well, had been employed as a logger, and had not participated in any rehabilitation services.

{¶ 17} 5. Relator submitted the October 7, 2009 report of his treating physician Stephen Altic, D.O., who opined that, although his allowed conditions in the 2001 claim had not yet reached maximum medical improvement ("MMI") relator was otherwise permanently and totally disabled, stating:

> This is in response to your September 9th letter. As you know, I see Mr. Shephard for several claims. As regards the claim 96-556947 which is allowed for left hip conditions, sciatica, lumbosacral strain and sprain, anxiety, depression, and L3-L4, L4-L5 disc problems, he continues to have significant low back pain that causes him daily problems and functionally impairs him.

> As you know, I see him for another claim, a 2001 claim that also is allowed for cervical problems but I believe not lumbar. For that other claim regarding his neck, I have

attested to his temporary total disability. As regards the 1996 claim regarding his lumbar pathologies, it is my opinion that he is functionally impaired by his low back conditions allowed in that claim to the extent that he is permanently and totally disabled from all gainful remunerative employment.

{¶ 18} 6. Relator was examined by Donald L. Brown, M.D., a psychiatrist. In his December 11, 2009 report, Dr. Brown identified the allowed conditions in relator's claim and further noted that he was born deaf in his right ear and had worn a hearing aid in his left ear. Dr. Brown opined that relator's allowed psychological condition had reached MMI, opined that he had a 25 percent class 2 moderate level of impairment and that he could return to his former position of employment or any other sustained remunerative employment for which he was otherwise qualified and which he could perform from a physical standpoint.

{¶ 19} 7. Relator was also examined by Earl F. Greer, Jr., Ed.D. In his June 10, 2010 report, Dr. Greer identified the allowed conditions in relator's claim, discussed his mental status exam, administered certain psychological testing. Dr. Greer opined that relator's allowed psychological condition had reached MMI, assessed a 15 percent whole person impairment, and concluded that relator's degree of emotional impairment would not currently be expected to solely prevent him from working, that work would be expected to be therapeutic, enhancing his self worth, but that motivation would be a significant factor.

{¶ 20} 8. Relator was also examined by John W. Cunningham, M.D. In his June 15, 2010 report, Dr. Cunningham identified the allowed conditions in relator's claim, identified the medical records which he reviewed, provided his physical findings upon examination. Dr. Cunningham ultimately concluded that relator's allowed physical conditions had reached MMI, assessed a 44 percent whole person impairment, and concluded that relator could perform sedentary and some light work.

{¶ 21} 9. Relator's first application for PTD compensation was heard before a staff hearing officer ("SHO") on August 11, 2010. The SHO rejected Dr. Cunningham's report because relator's previous physician, Dr. Altic, had opined that his allowed neck condition was not at MMI. Because the SHO found that relator's allowed physical conditions had

not all reached MMI and his condition remained temporary, the SHO denied relator's first application for PTD compensation.

{¶ 22} 10. Before relator filed a second application for PTD compensation, he participated in some vocational rehabilitation. Relator's file was closed on February 10, 2011, with the following notations:

> Mr. Shephard was referred and assigned for [vocational] [rehabilitation] services on 12/14/10.
>
> * * *
>
> Mr. Shephard participated in one week of job seeking skills training during this voc rehab referral.
>
> On January 27, 2011, I received the recommendation for job search and a return to work release with temporary restrictions from the physician of record, Dr. Altic.
>
> On January 28, 2011, I spoke with Mr. Shephard regarding the recommendation for services and pending rehab plan.
>
> On February 1, 2011, Mr. Shephard attended the job seeking skills meeting.
>
> On February 7, 2011, the vocational specialist reported that Mr. Shephard canceled the JSST meeting and he was no longer interested in participating in vocational rehabilitation services. However, he planned to meet with the attorney of record prior to making a final decision.
>
> I contacted Mr. Shephard regarding the above information. Mr. Shephard related that he was scheduled to meet with the attorney of record on February 8, 2011. I requested Mr. Shephard notify me of his final decision.
>
> On February 10, 2011, I contacted Mr. Shephard for follow-up. He reported that he had met with the attorney of record and that he was no longer interested in participating in vocational rehabilitation. I contacted the attorney of record for follow-up on this decision. The attorney representative was not available and a message was left requesting a return call. I related that the vocational rehabilitation case would be closing due to Mr. Shephard was refusing services at this time.

{¶ 23} As such, relator's rehabilitation file was closed because he refused to participate further.

{¶ 24} 11. Relator filed his second application for PTD compensation on June 6, 2011.

{¶ 25} 12. In support of his application, relator submitted the May 4, 2011 report of Dr. Altic who opined that he was permanently and totally disabled, stating:

> This gentleman continues to complain of functional problems and pain in both the neck and the low back. He has had copious amounts of conservative treatment regarding both his neck and his back and in fact in the past he had a cervical fusion performed. He also underwent a left hip replacement. Dr. Mavian has recommended lumbar fusion for his ongoing problems and at this time we continue to await the L5-S1 disc to be allowed in this claim.
>
> This gentleman was most recently evaluated by me on 02/28/2011 regarding his lumbar problems. He has continued lumbar axial pain with bilateral lower extremity pain and paresthesias. On that examination as before there were similar findings including limited painful flexion at 45 degrees and extension at 0-10 degrees with positive straight leg raising bilaterally at 35 degrees. There was diminished two point discrimination in both lower extremities along an L4-5, L5-S1 distribution.
>
> As regards to this gentleman's 2001 claim involving his neck, he was last evaluated by me on 03/24/2011. As I stated he had previous cervical fusion but continues to have neck pain. He had diminished range of motion with pain in all axes of the cervical spine with positive Spurling. He is currently on Lyrica for this condition. He had decided against participating in voc rehab which I had previously recommended. His medications also include Vicodin and Ambien.
>
> Given this gentleman's ongoing cervical and lumbar problems referable to this claim and his functional impairments due to these conditions, it is my opinion that Mr. Shephard is so impaired by these conditions, specifically enthesopathy and fracture of the left hip, L3-4 tear, L4-5 tear, and cervical degenerative disc disease 722.4, cervical spondylosis 721.0, disc bulge 722.2 cervical spine, and facet

arthropathy aggravation C1-C3 721.0 that he is permanently and totally disabled from all gainful remunerative employment.

{¶ 26} 13. Relator was examined by Ralph E. Skillings, Ph.D. In his May 17, 2011 report, Dr. Skillings identified the medical records which he reviewed and ultimately opined that relator had a 16 percent psychological impairment, a 22 percent physical impairment, for a total whole person impairment of 34 percent. Dr. Skillings did not offer an opinion as to whether or not relator was capable of performing any work.

{¶ 27} 14. Relator was examined by James R. Hawkins, M.D. In his August 16, 2011 report, Dr. Hawkins identified the allowed conditions in relator's claim, identified the medical records which he reviewed. Dr. Wunder concluded that relator's allowed psychological conditions had reached MMI, he assessed a 14 percent impairment and opined that relator's allowed psychological conditions did not prevent him from returning to work.

{¶ 28} 15. Relator was also examined by Steven Wunder, M.D. In his August 18, 2011 report, Dr. Wunder identified the allowed conditions in relator's claim, identified the medical records which he reviewed, provided his physical findings upon examination. Dr. Wunder concluded that relator's allowed physical conditions had reached MMI, assessed a 42 percent whole person impairment, and opined that relator would be capable of a full range of sedentary work doing mostly sit-down activities.

{¶ 29} 16. An employability assessment was prepared by Robert Sproule. In his September 30, 2011 report, Mr. Sproule indicated that relator had no skills that would transfer to sedentary work and offered his opinion that part of the reason relator refused to pursue vocational rehabilitation was because there was no rationale for the particular plan offered. Mr. Sproule ultimately concluded that relator was not a good candidate for vocational rehabilitation and that it was reasonable to conclude that he was permanently and totally disabled from all sustained remunerative employment.

{¶ 30} 17. Relator's application was heard before an SHO on November 8, 2011. The SHO relied on the medical reports of Drs. Hawkins and Wunder to conclude that relator's allowed physical and psychological conditions would not prevent him from returning to work and that he could perform a full range of sedentary employment.

Thereafter, the SHO provided a lengthy analysis of the non-medical disability factors, stating:

> The Dictionary of Occupational Titles lists several types of job titles that fit within the unskilled, entry-level sedentary employment restrictions faced by individuals such as the Injured Worker in this claim. These are jobs that do not require any transferable skills, or even a high school education. Rather, these jobs can be learned and performed by individuals while on the job in within a matter of days. The following list of jobs is not meant to be exhaustive. Rather, it is a partial listing of the kinds of jobs the Staff Hearing Officer considers to be current employment options for the Injured Worker since they are unskilled entry-level types of employment that fall within the allowed physical restrictions of the Injured Worker. In addition, these jobs do not require transferable skills or a rehabilitation program.
>
> These job titles include, but are not limited to: Addresser, Mailing House; Assembler, Small Products; Assembly Press Operator; Bench Assembler; Bench Hand; Election Clerk; Electric Accessories Assembler; Electronics Worker; Final Assembler, Optical Goods; Food Checker; Gluer; Greeter; Hand Packager; Information Clerk; [I]nspector, Eye Glass Frames; Lens [I]nspector; Odd Piece Checker; Order Clerk, Food and Beverage; Paint Spray Inspector; Production Inspector; Semi Conductor Inspector; Small Products Inspector; Surveillance System Monitor; Telephone Solicitor; Ticket Seller and Toy Assembler. In the prospective vocational rehabilitation plan declined by the Injured Worker, the Injured Worker was to be trained as an Office [C]lerk, Dispatcher and Rental Clerk.
>
> The Injured Worker is currently 50 years of age. The Staff Hearing Officer finds that the Injured Worker's age is overall viewed as a positive vocational asset. At 50 years old, he still has approximately 15 years before reaching the standard retirement age of 65. The Injured Worker's age in and of itself clearly would not prevent him from obtaining and performing sustained remunerative employment consistent with jobs identified above and in his tentative vocational rehabilitation plan as being a current employment options.
>
> The Injured Worker has a high school education, and graduated in 1979 from Oak Hill High School The Staff Hearing Office[r] finds that the Injured [W]orker's level of

education is overall viewed as a positive vocational factor. The Injured Worker is able to read, write and perform basic math. The Injured Worker's educational level in combination with the ability to read, write and perform basic math would assist him in obtaining and performing the entry-level unskilled type of employment consistent with jobs previously identified as being current employment options for him. As previously discussed, these are jobs that do not require any transferable skills or even a high school education. Rather, these jobs can be learned and performed by individuals while on the job and within a matter of days.

The Injured Worker's prior work history includes working for 20 years in his family's logging business as a Logger, Skidder Operator, and Truck Driver. The Staff Hearing Officer finds that the Injured Worker's prior work history is overall viewed as being a positive vocational asset. The Injured Worker has through his past work history demonstrated the ability to work well with others and maintain steady employment. This demonstrated work ability was performed in settings similar to some of the job titles already identified as being current employment options for the Injured Worker.

The Staff Hearing Officer finds it to be a significant factor in denying this application that, although the Injured Worker was referred to vocational rehabilitation 4 times on 4 separate occasions, he failed to complete the program either for reasons of medical instability and/or his decision to simply not participate in the program as of February, 2011. This decision was despite the fact that he was accepted into the vocational rehabilitation program and found feasible for vocational services. At hearing, the Injured Worker testified that this decision not to participate in vocational rehabilitation services was due to the fact that he had no transportation. However, Staff Hearing Officer found no evidence in the file that the Injured Worker conveyed this reason to vocational rehabilitation services so that other arrangements could be accommodated or other contingencies could be explored. Therefore the Staff Hearing Officer is not persuaded that the Injured Worker has exhausted all efforts to improve his employment potential. Since permanent total disability is an award of last resort, the Staff Hearing Officer finds the Injured Worker's failure to participate in the program despite having been accepted supports a finding that the Injured Worker is not

permanently and totally disabled from sustained remunerative employment at this time.

{¶ 31} 18. Relator filed his third application for PTD compensation, which is the subject of this mandamus action, on September 19, 2012.

{¶ 32} 19. In support of his application, relator submitted the June 12, 2012 psychological evaluation performed by Lee Roach, Ph.D. Dr. Roach administered the Wechsler Adult Intelligence Scale, IV, and the Wide Range Achievement Test. Dr. Roach specifically noted that, although relator was "cooperative with the evaluation process [and his] [i]nterest and motivation varied as did attention and concentration." According to Dr. Roach, relator's Wechsler Adult Intelligence Scale places him at the mentally deficient level of overall intellectual functioning which is below borderline functioning. Further, Dr. Roach indicated that the results of the Wide Range Achievement Test reflect limited success in all academic areas. Dr. Roach determined that relator's education cannot be viewed as a positive vocational factor and that he would not be a good candidate for any vocational rehabilitation. Dr. Roach concluded:

> Therefore, I conclude that the option for Mr. Shephard to pursue more extensive education or skills enhancement training is not feasible. He does not have any transferable skills from his previous employment. His allowed medical conditions with chronic pain and allowed psychological conditions with below borderline intellectual functioning serve as work prohibitive barriers. The current test results serve as a **negative work prohibitive vocational factor**. His intellectual functioning and depressive and anxiety symptoms as well as limited academic skills serves to impair his ability to obtain or maintain employment. Therefore, Mr. Shephard is permanently and totally disabled from all sustained remunerative employment.

(Emphasis sic.)

{¶ 33} 20. Relator was examined by Jennifer Stoeckel, Ph.D. In her December 12, 2012 report, Dr. Stoeckel identified the allowed conditions in relator's claim, discussed the medical records which she reviewed, and administered the Minnesota Multiphasic Personality Inventory-2. According to Dr. Stoeckel, the evaluation to the testing suggested a moderately exaggerated profile. Dr. Stoeckel noted that test results were

invalid due to elevations suggesting exaggeration of symptomology.   Intellectually, Dr. Stoeckel suspected borderline to low average abilities and possible learning disabilities. Overall, Dr. Stoeckel opined that relator's allowed psychological conditions had reached MMI, she assessed a 20 percent class 3 moderate impairment, and opined that relator was capable of working with the following limitations:

> The claimant is incapable of returning to his prior position of employment due to diminished concentration and focus. Per the claimant's description, he worked with machinery. He would be capable, however, of a low stress occupation that did not require considerable interpersonal contact or direct supervision. His concentration for task completion is reasonable if the work were repetitive in nature. However, he would have difficulty with highly complex activity or work requiring sustained focus and concentration. There is no indication that he would not be capable of relating to authority figures or getting along with coworkers, but describes himself as more isolated and withdrawn. He could work under a mild level of stress and repetitive activities at an independent level.

{¶ 34} 21. Relator was also examined by Brian E. Higgins, D.O.  In his January 3, 2013 report, Dr. Higgins identified the allowed conditions in relator's claim, discussed the medical records which he reviewed, provided his physical findings upon examination.  Dr. Higgins concluded that relator's allowed conditions had reached MMI, assessed a 35 percent whole person impairment, and opined that relator was capable of performing at a sedentary work level, stating:

> I do believe Mr. Shepherd [sic] is capable of sedentary work. This would be essentially a sit down job which would involve spending most of the time sitting with limited walking and standing for brief periods of time such as less than 15 minutes.

{¶ 35} 22. Relator's application was heard before an SHO on February 20, 2013.[2] The SHO relied on the medical reports of Drs. Higgins and Stoeckel to conclude that relator was able to perform at a sedentary work level provided that the work was low stress, routine unskilled work that would not require direct supervision or much public

---

[2] There are two orders in the record, one for each claim number. Although virtually identical, the wording used by the SHO varied slightly.

contact.' Thereafter, the SHO addressed the non-medical disability factors and found that relator's age of 51 years was an asset because he was still young enough to either directly reenter the workforce or seek employment-enhancing assistance if so motivated. The SHO also found that relator's high school education was an asset to reemployment. The SHO noted that relator indicated on his application that he could read, write, and perform basic math, and then addressed the report of Dr. Roach. The SHO determined that report was not persuasive, stating in one order:

> Injured Worker's counsel argued that evidence they have procured since the last denial of Injured Worker's prior IC-2 applications (06/12/2012 report of Dr. Roach) indicates that the Injured Worker is mildly mentally retarded. The Staff Hearing Officer does not find that physician or evidence to be especially persuasive in that it is inconsistent with prior psychological examinations in file and is conspicuous since Injured Worker's claim history, physically and psychologically, has been stable since the prior IC-2 applications that were previously denied by Staff Hearing Officer order. Further, the Staff Hearing Officer found Injured Worker's testimony at hearing today to be persuasive in that Injured Worker was able to interact in an appropriate manner capable of expressing his thoughts and feelings in a clear and understandable way. The Staff Hearing Officer concludes that Injured Worker's overall presentation is such that his intellectual level of functioning would at least be adequate for many of the jobs that he would otherwise be capable of performing from a psychological and physical standpoint.

The SHO worded the rejection of this report as follows in the second order:

> Claimant's counsel argued that recently obtained evidence (06/12/2012 Roach report) indicates that the claimant is mildly mentally retarded and that this should help serve to grant his request for permanent and total disability benefits. The SHO rejects this argument. Claimant has twice before filed IC-2 applications. When considering the psychological reports associated with those prior applications (06/10/2010 report of Dr. Greer and 08/16/2011 report of Dr. Hawkins) together with the report of Dr. Stoeckel referenced above, the SHO finds that the characterization of Claimant's intellectual capacity by each physician over time has remained remarkably consistent - low average intelligence - and that each physician has also opined a retained psychological

capacity to reenter the workforce. The SHO also concludes that this consistency indicates that claimant's mental capacity has not recently or suddenly deteriorated in the manner implied by the Claimant. The SHO further finds that since the Claimant has previously been able to successfully function in his life both occupationally and personally with this level of mental capability, it is reasonable to conclude that he will likewise be able to so function in the future as well. The SHO also found claimant's presentation at hearing to be consistent with this conclusion - that is, he was able to articulate his thoughts and feelings in a clear, reasonable and understandable manner.

Thereafter, the SHO determined that relator's work history was also an asset because it indicated that he ostensively learned his prior job duties on the job and that this demonstrated the ability to acquire new job skills. Thereafter, the SHO addressed relator's failure to seek any additional vocational rehabilitation after 2011 and determined that relator had not made a good effort to improve his skills, stating:

> Finally, the Staff Hearing Officer notes that as noted earlier Injured Worker last worked in 2001 at the very young age of 39. The Staff Hearing Officer further notes that in the 12-year interim Injured Worker has made only one effort at rehabilitation and that that effort resulted in a closure that was due to him no longer being interested in participating in vocational rehabilitation services (closure report dated 02/15/2011). The Staff Hearing Officer further notes that Injured Worker's own treating physician at the time, Dr. Altic, indicated in a report dated 05/04/2011 that he recommended Injured Worker's participation in such a program. The Staff Hearing Officer notes that the Ohio Supreme Court has previously held that the Commission may consider not only those skills and abilities which an individual actually possesses but also those skills and abilities which might have been developed had Injured Worker made the effort ([*State ex rel. Speelman v. Indus. Comm.*, 73 Ohio App.3d 757 (10th Dist.1992)] and [*State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525 (1995)]). In this case, the Staff Hearing Officer finds that the Injured Worker despite having the opportunity and youth on his side failed to meet his obligations in this regard. This is yet another basis for denial of his application.

{¶ 36} The SHO found that relator was capable of performing some sedentary employment within the psychological restrictions set forth by Dr. Stoeckel, found that his vocational factors were overall positive, and that relator's failure to seek additional vocational rehabilitation should be held against him and denied his application for PTD compensation.

{¶ 37} 23. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 38} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 39} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 41} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson*

*v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 42} Relator's entire argument focuses on the commission's rejection of Dr. Roach's report. Relator asserts that the SHO improperly substituted his medical opinion by evaluating and discounting Dr. Roach's findings. Relator further asserts that the commission was required to accept Dr. Roach's findings with regard to his intellectual ability. Specifically, relator contends that Dr. Roach's report is consistent with Dr. Stoeckel's report especially considering that Dr. Stoeckel noted that relator had taken special education classes in high school for reading.

{¶ 43} As noted in the findings of fact, this was relator's third application for PTD compensation. When the commission denied his application the second time, in November 2011, the commission specifically listed numerous jobs relator could perform which did not require transferable skills or a rehabilitation program. Although Dr. Roach's testing revealed limited intellectual abilities, there is nothing in his report which would indicate that relator could not perform unskilled work. Further, as the commission noted, Dr. Roach's report was contrary to the previous psychological reports and the SHO explained why he was rejecting that report. At oral argument, relator's counsel argued that the SHO did not list the contrary psychological evidence; however, as counsel noted, there are two orders in the record denying relator's application. In one, the SHO did not identify the contrary evidence but, in the other order, the SHO did.

{¶ 44} Even if Dr. Roach's intellectual testing is an accurate reflection of relator's ability, the fact remains that relator did graduate from high school and did maintain a job as a logger for 22 years. Mr. Sproule, who prepared an employability assessment in 2011, indicated that relator's high school education was a positive vocational factor. Further, the magistrate specifically notes that relator's vocational rehabilitation file was closed because relator was no longer interested in services. To the extent that Dr. Roach indicates in his report that "vocational rehabilitation services have been exhausted based on the above transferable skills analysis," this statement is not accurate. Again,

rehabilitation was terminated at relator's request and not because of a negative transferable skills analysis. Further, the commission was not required to accept Dr. Roach's ultimate conclusion, that relator could not enhance his skills. The fact that relator was able to participate in special education classes in high school is some evidence that a person with limited intellectual functioning can participate and learn. As the SHO stated, relator's "overall presentation is such that his intellectual level of functioning would at least be adequate for many of the jobs that he would otherwise be capable of performing." Although relator asserts that the SHO rendered a medical opinion, the magistrate disagrees. While Dr. Roach opined that relator's intellectual functioning rendered him incapable of performing some sustained remunerative employment, the SHO disagreed. The SHO did not render a medical opinion; instead, the SHO rejected Dr. Roach's ultimate conclusion.

{¶ 45} Relator is asking this court to reweigh the evidence and to find his evidence more persuasive. However, that is not the job of this court.

{¶ 46} Finding that the commission's order is supported by some evidence, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).